THE HEARST CORPORATION *v.* WAYNE HUGHES

[No. 56, September Term, 1982.]

*Decided September 15, 1983.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Theodore Sherbow* and *Mary R. Craig,* with whom were *Sherbow, Shea & Tatelbaum, P.A.* on the brief, for appellant.

No brief filed for appellee.

RODOWSKY, J., delivered the opinion of the Court. ELDRIDGE and DAVIDSON, JJ., dissent. DAVIDSON, J., filed a dissenting opinion at page 132 *infra,* in which ELDRIDGE, J., joins.

The principal question presented in this appeal is whether, in a negligent defamation action, actual impairment of reputation must be proved in order to establish a right to recover compensatory damages, where emotional distress, caused by the defamation, has been proved to the satisfaction of the trier of fact.[1] We shall hold that actual impairment of reputation is not required to establish the tort.

In July 1975, Dawn Rottman (Rottman) purchased a new American Motors Corporation (AMC) Matador from Forty West AMC/Jeep, Inc. (40 West). Soon after its purchase, the car evidenced serious mechanical defects. On fifteen occasions, Rottman brought the car to 40 West for warranty service, but the defects were not corrected.

During August 1976, the assets, but not the liabilities, of 40 West were sold to Security AMC/Jeep, Inc. (Security), a Delaware corporation wholly owned by AMC. At that time, Security began to sell and service cars at the location formerly occupied by 40 West. The plaintiff below, Wayne Hughes (Hughes), was employed by Security as its operating manager.

---

1. Throughout this opinion, the phrase "negligent defamation" means a defamation action in which a private individual has proven that a false defamatory statement was made, but has failed to prove that such statement was made with " 'actual malice' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times Co. v. Sullivan, 376 U.S. 254, 279-80, 84 S. Ct. 710, 726, 11 L. Ed. 2d 686, 706 (1964).

Throughout this opinion, the phrase "emotional distress" includes personal humiliation and mental anguish.

Rottman, who continued to experience problems with her car, brought it to Security for service. Although neither Security nor Hughes had sold the car to Rottman, and the car's warranty had expired, Hughes obtained special authorization from AMC to perform warranty service. Security made four attempts to repair the car, the last of which occurred on 29 June 1977. After this repair, a test drive was made by an investigator from the Maryland Department of Transportation who reported that "the vehicle operated properly" and that "no problem could be observed." On 22 July 1977, the car's engine cut out, and the car never again functioned.

Dissatisfied with the service she had received from AMC and Security, Rottman complained to a large number of government agencies, consumer help groups, newspapers, and television stations, including WBAL-TV, owned by the petitioner, The Hearst Corporation (Hearst). As part of its public affairs programming, WBAL broadcast short filmed commentaries by, *inter alia,* members of the public who had requested to appear.

On 29 September 1977, WBAL-TV broadcast a videotape of Rottman making the following complaint:

"Dawn Rottman: Viewers please bear with me while I read the following letter. If after I'm through, any of you have any suggestions, please send them to 1211 Cleveland Street, Baltimore, Maryland 21230.

Dear Mr. Wayne Hughes:

Hi Mr. Hughes. I'm sure that you know who I am. Just think a minute and you'll get it. I'm the lady who has been trying for two years to get my car running properly. And you Mr. Dick, how are you tonight. Remember when I bought my new 1975 AMC Matador on July 9, 1975 and was explained your great buyer protection plan. Now I ask, what

protection? It surely isn't against an engine that cuts out at various speeds without warning is it? Let me see, August the 27th, 1975 when the car only had 872 miles on it was the first trip to the service center concerning this. June 28, 1977 when the car had approximately 14,500 miles on it was the 19th trip for the same problem and guess what? On July 22, 1977 the engine cut out and the car hasn't run since. I mean what should I expect for $5,093.16. A miracle? No just the car that runs. After all it has power steering and power brakes and you know that when you are doing, going down a highway doing 55 miles per hour and the engine cuts out that I can't steer or stop the car. You don't know the fun of playing dodge-um cars with three children in the back seat on the beltway and all you viewers, guess what? I have to go to court to try to get out of this death trap and get a car instead of a toy that plays with peoples' lives from AMC. Mr. Hughes, here's one person you could offer a camera and calculator to and I still wouldn't buy another AMC product."

As described by the court, Rottman explained that she "made her comments concerning Hughes because she considered Hughes to be the owner of the Security dealership, and she wanted everyone who would listen to her to know that Hughes was responsible for the difficulties she had experienced with her car."

On 14 July 1978 Hughes, alleging defamation, sued Hearst. On 29 March 1982, in a written opinion issued after a bench trial, the trial court found that Rottman's statement was defamatory, because it disparaged Hughes' conduct in his trade, business or employment. Additionally, the trial court found that Rottman's statement was false, because Hughes had not sold Rottman the car and, therefore, "it was not Hughes who put Rottman in a 'death trap.' He had no connection whatever with the 1975 sale of the vehicle to

Rottman, nor with 15 of the 19 alleged trips 'for the same problem.' " Moreover, the trial court found that after the last such repair, the vehicle had operated properly.[2] The trial court further found that Hearst had been negligent in broadcasting the statement.

On the damage aspect of the case the trial court found

"no out-of-pocket loss sustained by Hughes. Nor [was] there any evidence of impairment of reputation."

The trial court was "persuaded, however, that the publication did produce personal humiliation and mental anguish," for which compensatory damages in the amount of $2,500 were awarded.

Hearst appealed, and while that appeal was pending, Hearst petitioned for certiorari. We granted the writ before the appeal had been considered by the Court of Special Appeals.

Hearst contends that the trial court erred in awarding damages for emotional distress without proof that the broadcast impaired Hughes' reputation. The exclusive foundation for Hearst's argument is Maryland common law. It is Hearst's position that, following *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974), this Court has not defined the "actual injury" for which recovery will be allowed, absent proof of constitutional malice. We are invited to use *Gertz* as the occasion for requiring, as a matter of state law, that actual harm to reputation be proved before any compensatory damages for any harm may be awarded. The rule Hearst seeks is not Maryland law, and we decline to adopt it as Maryland law.

---

2. Hearst does not contend that the statement was not false and defamatory. For purposes of this appeal we accept the trial court's conclusion, without expressing any opinion on that aspect of the case.

I

A.

The subject legal issue lies in a corner of the law of defamation. To locate the issue in relation to the rules surrounding it, we must *sketch* common law defamation, federal constitutional developments and recent changes in the Maryland common law, insofar as they relate to the instant case. Unfortunately terms like "injury," "actual injury," "damage" and "harm" are used in different decisions, and often within the same decision, to represent different concepts. We shall use the following terms as defined in Restatement (Second) of Torts (Restatement).

"Injury" means "the invasion of any legally protected interest of another." § 7 (1).

"Harm" means "the existence of loss or detriment *in fact* of any kind to a person resulting from any cause." § 7 (2). (Emphasis added.)

"Damages" mean "a sum of money awarded to a person injured by the tort of another." § 12A.

For purposes of the instant appeal, the words published by Hearst were actionable per se at common law. No extrinsic facts were relied upon to demonstrate the defamatory nature of the statement. We need not determine whether broadcasting of a defamatory oral statement over television is libel or slander. The trial court viewed the statement as ascribing conduct to Hughes that would adversely affect his fitness for the proper conduct of his business, and that aspect of the ruling is not challenged here. As either libel or slander, such words are actionable per se at common law. *See, e.g., Fennell v. G.A.C. Finance Corp.,* 242 Md. 209, 218-221, 218 A.2d 492, 497-98 (1966); *Heath v. Hughes,* 233 Md. 458, 463-65, 197 A.2d 104, 106-107 (1964); *Pollitt v. Brush-Moore Newspapers, Inc.,* 214 Md. 570, 577, 136 A.2d 573, 577 (1957); *Newbold v. Bradstreet,* 57 Md. 38, 52-53 (1881); Restatement, §§ 569 and 573.

Under pre-*Gertz* law, the fact finder in a defamation action predicated on words actionable per se was permitted

to assess general damages for the presumed harm to reputation. *See generally Fennell v. G.A.C. Finance Corp., supra; Thompson v. Upton,* 218 Md. 433, 146 A.2d 880 (1958); *Evening News Co. v. Bowie,* 154 Md. 604, 141 A. 416 (1928); *Bowie v. Evening News,* 148 Md. 569, 129 A. 797 (1925); *Kilgour v. Evening Star Co.,* 96 Md. 16, 53 A. 716 (1902); *Gambrill v. Schooley,* 93 Md. 48, 48 A. 730 (1901). One reason was that "[i]n the case of words or conduct actionable *per se,* their injurious character is a self-evident fact of common knowledge of which the court takes judicial notice and need not be pleaded or proved." *M & S Furniture v. De Bartolo Corp.,* 249 Md. 540, 544, 241 A.2d 126, 128 (1968). *See also* Murnaghan, *Ave Defamation, Atque Vale Libel and Slander,* 6 U. of Balt. L. Rev. 27, 35 (1976). Further, at common law, the defamatory statement was viewed to be presumptively false. Truth was an affirmative defense so that the initial burden of proving falsity did not rest upon the plaintiff. *See Jacron Sales Co. v. Sindorf,* 276 Md. 580, 597, 350 A.2d 688, 698 (1976).

If we use the term "defamatory publication" for published words, actionable per se, that at common law carry a presumption of harm to reputation, we may state the common law rule, for cases not involving punitive damages or questions of privilege, as follows:

Common Law rule:

Where P is any person and D is any person, then

$$\frac{\text{defamatory}}{\text{publication}} + \text{falsity} = \frac{\text{cause of action for}}{\text{compensatory damages.}}$$

*New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964) involved a publication that was libelous per se under Alabama common law. From this factor Alabama law implied harm and permitted damages without proof of harm. *Id.* at 262, 84 S. Ct. at 716, 11 L. Ed. 2d at 696. The presumed harm was to reputation. *Id.* at 267, 84 S. Ct.

at 719, 11 L. Ed. 2d at 698. The Court held that the First Amendment "prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* at 279-80, 84 S. Ct. at 726, 11 L. Ed. 2d at 706. We shall call these alternative standards of fault "constitutional malice." The *New York Times* rule was extended to plaintiffs who are public figures in *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 87 S. Ct. 1975, 18 L. Ed. 2d 1094 (1967). In *Jacron, supra,* 276 Md. at 591-92, 350 A.2d at 694-95, we expressed the view that *New York Times* is not limited to media defendants. Thus we have the

*New York Times/Butts* rule:

Where P is a public figure and D is any person, then

$$\begin{array}{l}\text{defamatory} \\ \text{publication}\end{array} + \text{falsity} + \begin{array}{l}\text{fault by} \\ \text{constitu-} \\ \text{tional} \\ \text{malice} \\ \text{standard}\end{array} = \begin{array}{l}\text{constitutionally} \\ \text{permissible state} \\ \text{cause of action} \\ \text{for compensatory} \\ \text{damages (punitive} \\ \text{damages also per-} \\ \text{mitted)}.\end{array}$$

*Gertz* dealt with a plaintiff who was not a public figure and with a defendant engaged in media expression. Three constitutionally based safeguards were erected for such a defendant. First, there may be no "liability without fault, [but] the States may define for themselves the appropriate standard of liability . . . ." *Gertz, supra,* 418 U.S. at 347, 94 S. Ct. at 3010, 41 L. Ed. 2d at 809. Secondly, there may be no compensatory damages without evidence of actual harm. Presumed harm to reputation is insufficient. The language of the Supreme Court was:

 The common law of defamation is an oddity of tort law, for it allows recovery of purportedly compensatory damages without evidence of actual loss. Under the traditional rules pertaining to actions for libel, the existence of injury is presumed from the fact of publication. Juries may award substantial sums as compensation *for supposed damage to reputation without any proof that such harm actually occurred.*

 . . . .

 It is necessary to restrict defamation plaintiffs who do not prove knowledge of falsity or reckless disregard for the truth to compensation for actual injury. *We need not define "actual injury,"* as trial courts have wide experience in framing appropriate jury instructions in tort actions. Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, *the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.* Of course, juries must be limited by appropriate instructions, and all awards must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury. [418 U.S. at 349-50, 94 S. Ct. at 3011-3012, 41 L. Ed. 2d at 810-11 (emphasis added).]

Thirdly, *Gertz* held that the private defamation plaintiff who did not establish fault by the constitutional malice standard could not recover punitive damages. The reasoning was based on the second holding which had prohibited compensatory damages based on presumed harm to reputation in negligent defamation cases. From the standpoint of the dangers of media self-censorship, the Court likened jury discretion to award punitive damages to "the doctrine of presumed damages . . . ." 418 U.S. at 350, 94 S. Ct. at 3012, 41 L. Ed. 2d at 811.

Although the injury to reputation, recognized by state defamation law, carried a presumption of harm to reputation, *Gertz* proscribed the award of general damages for presumed harm (called "presumed damages" at times in *Gertz*). Compensatory damages may be awarded for harm (*i.e.*, for loss or detriment in fact and called "actual injury" at times in *Gertz*). However, under *Gertz* compensable harm is not limited to harm to reputation. Nor did *Gertz* state that harm to reputation must first be found before damages for other types of harm, *e.g.*, emotional distress, could be awarded. And so we have the

*Gertz* rule:

Where P is a private person and D is engaged in media expression, then

| defamatory publication | + falsity + | fault by a standard less than constitutional malice | + harm = | constitutionally permissible cause of action for compensatory damages (punitive damages not allowed). |
|---|---|---|---|---|

In *Jacron,* this Court held that, under Maryland law, the "rules announced in *Gertz* apply to cases of libel and slander alike brought against non-media defendants," and that the standard of fault would be negligence. 276 Md. at 594, 596-97, 350 A.2d at 696, 697-98. Thus there is the

*Jacron* rule:

Where P is a private person and D is any person, then

| defamatory publication | + falsity + | fault by negligence standard | + harm = | Maryland cause of action for compensatory damages (punitive damages not allowed). |
|---|---|---|---|---|

Following *Jacron,* the Court of Special Appeals in *IBEW, Local 1805 v. Mayo,* 35 Md. App. 169, 370 A.2d 130 (1977), opined on the very issue presented in the instant matter. A supervisor at an industrial plant claimed that he had been defamed in the union newsletter. Judgment went for the supervisor for $1.00 compensatory damages and $5,000 punitive damages. On appeal, the union contended "that the *sine qua non* in a defamation case is evidence of actual damage to reputation, and that no other element of damage may be considered unless it is shown to flow from the proven damage to reputation." *Id.* at 179, 370 A.2d at 135. Judge Powers, writing for the intermediate appellate court, pointed out that the case was one of libel per se in which harm to reputation is presumed. *Id.* After stating the rule from *Gertz,* it was held that there was sufficient evidence to support an award of compensatory damages, because the jury could have found that the plaintiff "suffered actual injury, at least to the extent of personal humiliation, embarrassment, and mental anguish and suffering." *Id.* at 180, 370 A.2d at 136. On certiorari review this Court affirmed, but on a different ground. Because the jury had been instructed that it had to find fault by the constitutional malice standard, the award of punitive damages would not be set aside. *IBEW, Local 1805 v. Mayo,* 281 Md. 475, 379 A.2d 1223 (1977). With respect to compensatory damages, the union's argument in *Mayo,* that harm to reputation is prerequisite, was made solely on the constitutional level. But, because the plaintiff had established constitutional malice, we held that compensatory damages were allowable, even if based upon presumed harm to reputation. As to the issue presented in the case at hand, we said (281 Md. at 482 n.4, 379 A.2d at 1227 n.4):

> Since the union does not attempt to argue that, constitutional considerations aside, state law would nevertheless have barred the damage award returned here, we do not reach that question.

Our opinion in *Mayo* also reasoned, at the constitutional level, from *Time, Inc. v. Firestone,* 424 U.S. 448, 96 S. Ct.

958, 47 L. Ed. 2d 154 (1976), a case arising out of Florida. The plaintiff, who was not a public figure, had, prior to trial, withdrawn any claim for damages for harm to reputation. Damages were awarded for emotional distress. In holding that state law may permit such damages in negligent defamation, the Supreme Court rejected, as a matter of constitutional law, the argument which Hearst advances to us. The Court reasoned as follows (424 U.S. at 460, 96 S. Ct. at 968, 47 L. Ed. 2d at 166):

> Petitioner has argued that because respondent withdrew her claim for damages to reputation on the eve of trial, there could be no recovery consistent with *Gertz.* Petitioner's theory seems to be that the only compensable injury in a defamation action is that which may be done to one's reputation, and that claims not predicated upon such injury are by definition not actions for defamation. But Florida has obviously decided to permit recovery for other injuries without regard to measuring the effect the falsehood may have had upon a plaintiff's reputation. This does not transform the action into something other than an action for defamation as that term is meant in *Gertz.* In that opinion we made it clear that States could base awards on elements other than injury to reputation, specifically listing "personal humiliation, and mental anguish and suffering" as examples of injuries which might be compensated consistently with the Constitution upon a showing of fault. Because respondent has decided to forgo recovery for injury to her reputation, she is not prevented from obtaining compensation for such other damages that a defamatory falsehood may have caused her.

Accordingly, we may frame the

*Firestone* rule:

Where P is a private citizen and D is engaged in media expression, then

| defamatory publication | + | falsity | + | fault by negligence standard | + | harm by way of emotional distress without proof of harm to reputation | = | constitutionally permissible cause of action for compensatory damages (punitive damages not allowed). |
|---|---|---|---|---|---|---|---|---|

The analogy that this Court in *IBEW, Local 1805 v. Mayo, supra,* drew to *Firestone* was that "if the absence of injury [harm] to reputation will not prevent an award of compensatory damages where mere negligence is established, it will not do so where, as here, the *New York Times* standard of malice is met." 281 Md. at 482, 379 A.2d at 1227. While in both *Mayo* and *Firestone* the plaintiffs introduced some evidence of harm by way of emotional distress, and while such evidence satisfies constitutional standards in a negligent defamation case, this Court did not have to consider that aspect in *Mayo.* Because a "defamatory publication" gives rise to a common law presumption that reputation has been harmed, and because the United States Constitution does not prohibit awarding damages for that presumed harm in a constitutional malice case, the $1.00 compensatory damages in *Mayo* were sustained as damages for harm to reputation, absent proof of harm to reputation, as a matter of state law.

*Mayo* recognizes that, as a matter of Maryland law, the presumption of harm to reputation still arises from the publication of words actionable per se. A trier of fact is not constitutionally barred from awarding damages based on that presumption in a constitutional malice case. A trier of fact is constitutionally barred from awarding damages based

on that presumption in a negligent defamation case. But *Gertz* does not constitutionally bar awards of damages based on proven harm. Nothing in present Maryland law bars awards of damages based on proven harm. Under Maryland common law as constitutionally modified, the trial court did not err in granting judgment in favor of Hughes.

### B.

The foregoing review brings us to the corner of defamation law where the issue lies. Hearst essentially seeks a change in Maryland law, when it argues that proof of harm to reputation is essential to negligent defamation. What Hearst asks us to rule is that, if harm to reputation is not proved, then the case does not involve harm to reputation, and there is no actionable defamation. In other words, Hearst would scuttle the common law presumption of harm to reputation from words actionable per se.

Hearst says that, absent harm to reputation, there may be a tort, but it is not the tort of defamation. This analysis is presented in Eaton, *The American Law of Defamation Through Gertz v. Robert Welch, Inc. and Beyond: An Analytical Primer,* 61 Va. L. Rev. 1349 (1975). That article appeared before the Supreme Court's decision in *Firestone* was handed down. Eaton said:

Negligent infliction of mental distress by publishing a falsehood may well be a tort, but it is not the tort of defamation. Defamation is injury to reputation. If the essence of the law of defamation is to be preserved in the wake of the Court's destruction of the conclusive presumption of injury, a defamation plaintiff must first prove impairment of reputation before he is entitled to recover for personal humiliation and mental anguish and suffering. [*Id.* at 1438-39. (Footnote omitted.)]

While the modern tort of intentional infliction of severe emotional distress seeks to protect freedom from emotional

distress, it is not exclusive in that regard. Defamation historically has "accorded substantial legal protection, within limited areas, to the [interest] in freedom from emotional distress," as well as to the interest in freedom from invasion of privacy. L. Eldredge, *The Law of Defamation* § 2, at 3 (1978). But primarily defamation "has been traditionally regarded as that part of tort law which protects the interest of a person in his reputation, *i.e.,* his good name." *Id.* at 2. Absent defamatory words of some type there is no tort of defamation. But here there is a publication of false and defamatory matter from which harm to reputation is presumed. The tort is defamation even though the harm proven to satisfy *Gertz* is emotional distress.

Another difficulty with Hearst's position is that it proves too much. In *IBEW, Local 1805 v. Mayo,* we sustained the award of $1.00 in compensatory damages even though there was no proof of harm to reputation. That was a defamation action. It did not become some other tort because harm to reputation was not proved. It is true that in *Mayo* fault was established by the constitutional malice standard, while in the case at bar the standard met was negligence. This distinction goes to the degree of the defendant's fault and to damages, not to whether the cause of action is one for the protection of the interest in freedom from harm to reputation.

Further, proof of harm to reputation is not considered by a number of treatises to be essential to an action in negligent defamation. This is reflected by the view taken of the status, after *Gertz,* of nominal damages in such actions. The Restatement, § 620 adopts the position that "[o]ne who is liable for a slander actionable per se or for a libel is liable for at least nominal damages." Comment *c* to that section recognizes that a constitutional question is involved, but concludes that "[i]t seems likely that the constitutional restriction will be confined to preventing the awarding of the common law 'presumed damages' without proof as to what the damages are." L. Eldredge, *The Law of Defamation* § 95.b, at 541 and R. Sack, *Libel, Slander, and Related Prob-*

*lems* § VII.2.1, at 345 (1980) take the same position. Comment *a* to Restatement, § 620 describes the types of situations in which it believes nominal damages will lie.

> Nominal damages are awarded when the insignificant character of the defamatory matter, or the plaintiff's bad character, leads the jury to believe that no substantial harm has been done to his reputation, and there is no proof that serious harm has resulted from the defendant's attack upon the plaintiff's character and reputation. They are also awarded when they are the only damages claimed, and the action is brought for the purpose of vindicating the plaintiff's character . . . .

Comment *b* states that the rule applies when the defamatory words are actionable per se. Inasmuch as these authorities would allow a judgment for the plaintiff, albeit for nominal damages, in cases in which no harm at all has been proven, they do not view proof of harm to reputation as an essential element of the tort. *A fortiori* these same authorities would allow judgment for the plaintiff in a case of per se defamation where harm is proven, by way of emotional distress, without proof of harm to reputation.

Our comparison to the A.L.I. treatment of nominal damages requires reference to *Metromedia, Inc. v. Hillman,* 285 Md. 161, 172, 400 A.2d 1117, 1123 (1979). There we held that a declaration in libel must contain, *inter alia,* "allegations of damages with some particularity, since *Gertz* and *Jacron* forbid presumed damages." That case did not directly present whether a plaintiff may use defamation in Maryland solely to vindicate reputation, *i.e.,* as a vehicle to obtain a judicial determination, through the award of nominal damages, that the words were false. However, we said in *Metromedia* that "[s]ince nominal or presumed damages no longer exist, in all libel actions Maryland pleading principles require the same type of pleading as to damages as was formerly necessary in libel per quod." 285 Md. at 163, 400 A.2d at 1119. Later in that opinion we spoke of nominal

damages as being prohibited where their imposition would be a form of liability without fault ("Since under *Gertz* we were no longer permitted to impose liability on the media without fault, as, *e.g.,* by permitting recovery of nominal damages for calling a person a thief, and since where the *New York Times* test of reckless falsity was not met, presumed or punitive damages were no longer permitted, it became necessary [in *Jacron*] to frame new rules."). 285 Md. at 168, 400 A.2d at 1121. We need not decide in the instant matter the status of nominal damages after *Gertz,* either constitutionally or under Maryland law. The quoted concern expressed in *Metromedia* was only with respect to the award of damages based on presumed harm. In the instant matter, the damages awarded were for proven emotional distress. Just as the A.L.I. position on nominal damages reflects that the common law presumption of harm to reputation from the negligent publication of words both false and actionable per se is sufficient to make out the tort of defamation, so here those same factors are sufficient to constitute defamation, with, instead of nominal damages, damages based on proven harm.

We are directed by Hearst to the recent decision of the Supreme Court of Kansas in *Gobin v. Globe Publishing Co.,* 232 Kan. 1, 649 P.2d 1239, 1243 (1982), where that court adopted the rule that "[u]nless injury to reputation is shown, [a] plaintiff has not established a valid claim for defamation . . . ." This approach, in our view, fails to respect the centuries of human experience which led to a presumption of harm flowing from words actionable per se. One reason for that common law position was the difficulty a defamation plaintiff has in proving harm to reputation. Eaton, *supra,* at 1357 describes the problems:

> The conclusive presumption of injury for certain kinds of defamation derives from the recognition that injury to reputation is extremely difficult to demonstrate, even when it is obvious that serious harm has resulted. Identifying and locating those persons in the community who may think less

highly of the plaintiff because of the publication is difficult, especially when the defamatory statement has been indiscriminately circulated. And once located, it is the rare witness who will admit to the plaintiff or testify in court that his attitudes toward the plaintiff have changed as a result of the publication, when by doing so he admits that he changed his opinion without determining the truth or falsity of the statement.

Ordinarily, the plaintiff will be able to present witnesses who will testify only that the plaintiff's reputation had been good, that their own opinion of the plaintiff has not changed, but that the plaintiff's general reputation in the community has suffered as a result of the publication. This kind of testimony often lacks credibility because it is bottomed on hearsay and imputes to others a change in attitude which the witnesses themselves thought unnecessary. And this kind of evidence is usually insufficient to establish the necessary causal connection between the defamatory publication and the alleged decline in community standing. In short, a requirement of actual proof of injury to reputation has always been thought to reduce considerably any chance for adequate compensation. [Footnote omitted.]

Defendants in negligent defamation cases are protected by the prohibition against liability without fault. They have no exposure to punitive damages. There is no exposure to general damages based on presumed harm. With the possible exception of nominal damages, compensatory damages are limited to compensation for harm proven and found as a fact. Victims of defamation can reasonably become genuinely upset as a result of the publication. If such persons can convince a trier of fact that their emotional distress is genuine and can prove the other common law and constitutionally required elements of a negligent defamation case, we see no social purpose to be served by

requiring the plaintiff additionally to prove actual impairment of reputation.

## II

Hearst also contends there is an absolute privilege for the publication of opinions which disclose the facts upon which they are based and that that privilege applies here. The argument's origin is a passage in *Gertz, supra,* 418 U.S. at 339-340, 94 S. Ct. at 3007, 41 L. Ed. 2d at 805 ("Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact." [Footnote omitted.]). Cited to support the proposition are various federal appellate opinions [3] and Restatement, § 566, which reads: "A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion."

The Restatement distinguishes between "pure" and "mixed" opinions. *Id.* at comment *b.* A "pure" opinion is one in which the speaker discloses the facts on which he bases his opinion of the plaintiff, while a "mixed" opinion is one which, "while an opinion in form or context, is apparently based on facts regarding the plaintiff or his conduct that have not been stated by the defendant . . . ." *Id.* Comment *c* to § 566 states that a defamation action may not be maintained for a "pure" opinion, no matter how unjustifiable, derogatory or vituperative the opinion may be.

In an effort to bring itself under the rule on which it relies, Hearst treats the publication as not applying to the plaintiff Hughes. In its brief Hearst says that "it is clear that Rottman was expressing her opinion about AMC's product

---

**3.** Hotchner v. Castillo-Puche, 551 F.2d 910 (2d Cir. 1977), *cert. denied sub. nom.,* Hotchner v. Doubleday & Co., 434 U.S. 834; Buckley v. Littell, 539 F.2d 882 (2d Cir. 1976), *cert. denied,* 429 U.S. 1062 (1977).

and the Buyer Protection Plan." Rottman is said to have been expressing her opinion that AMC's car was a deathtrap and a toy. Because she explained the facts underlying her opinion, *i.e.,* the date she bought the car, the fact that it malfunctioned and her attempts to have it repaired, Hearst claims we are dealing with a "pure" opinion.

There is no indication of any contention in the trial court that the statements were not of and concerning Hughes. The trial court specifically found Rottman's statements to be "patently false as applied to Plaintiff Hughes." Section 566, comment *c* points out that liability may attach for false and defamatory factual statements underlying pure opinion, when it states:

> [T]he effect of the rule that there can be no recovery in defamation for a pure expression of opinion can be set forth by applying it to four fact patterns:
>
> (1) If the defendant bases his expression of a derogatory opinion of the plaintiff on his own statement of false and defamatory facts, he is subject to liability for the factual statement but not for his expression of opinion.

*See also Hoover v. Peerless Publications, Inc.,* 461 F. Supp. 1206 (E.D. Pa. 1978); *Rand v. New York Times,* 75 A.D.2d 417, 422, 430 N.Y.S.2d 271, 274 (1980) (dicta). Thus, even if § 566 reflects Maryland law, as Hearst contends, this case is not within that rule.

> *Judgment of the Circuit Court for Howard County affirmed.*
> *Costs to be paid by The Hearst Corporation.*

*Davidson, J., dissenting:*

In *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S. Ct. 710 (1964), the United States Supreme Court established as

a constitutional requirement that, in order to recover damages in a defamation action, a public figure must prove that a false defamatory statement "was made with 'actual malice' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co.,* 376 U.S. at 279-80, 84 S.Ct. at 726. In *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997 (1974), the Supreme Court determined that the *New York Times* standard does not apply when a private individual seeks to recover damages for a false defamatory statement. There, that Court held that under such circumstances, "so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability." *Gertz,* 418 U.S. at 347, 94 S.Ct. at 3010.

In allowing a lesser standard of liability, the Supreme Court recognized that private individuals who have not "voluntarily exposed themselves to increased risk of injury from defamatory falsehood" are entitled to a greater degree of protection than public figures. *Gertz,* 418 U.S. at 345, 94 S.Ct. at 3010. The Supreme Court further recognized that "[t]he largely uncontrolled discretion of juries to award damages where there is no loss unnecessarily compounds the potential of any system of liability for defamatory falsehood to inhibit the vigorous exercise of First Amendment freedoms." *Gertz,* 418 U.S. at 349, 94 S.Ct. at 3011-12. Accordingly, the Supreme Court held "that the States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth." *Gertz,* 418 U.S. at 349, 94 S.Ct. at 3011. In explicating this holding, the Supreme Court said:

> *"It is necessary to restrict defamation plaintaiffs who do not prove knowledge of falsity or reckless disregard for the truth to compensation for actual injury. We need not define 'actual injury,'* as trial courts have wide experience in framing appropriate jury instructions in tort actions. *Suffice it to say that actual injury is not limited to out-of-pocket*

*loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.* Of course, juries must be limited by appropriate instructions, and all awards must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury." *Gertz,* 418 U.S. at 349-50, 94 S.Ct. at 3012 (emphasis added).

In *Jacron Sales Co. v. Sindorf,* 276 Md. 580, 350 A.2d 688 (1976), this Court considered the appropriate standard of fault to be applied when a private individual seeks to recover damages for a false defamatory statement. In reviewing the historical evolution of the *Gertz* standard, this Court said:

"The Supreme Court, with a majority of five, held that the constitutioal privilege articulated in *New York Times* does not extend to defamatory falsehoods concerning an individual who is neither a public official nor a public figure. Rather than expand the *New York Times* standard to falsehoods relating to private persons when made in connection with events of public interest, as the *Rosenbloom* [*v. Metromedia,* 403 U.S. 29, 91 S. Ct. 1811 (1971)] plurality had done, the Court applied a number of restrictions to the law of libel designed to accommodate freedom of the press with the state's interest in protecting a private person's reputation. The Court held that in cases of defamation of private persons (1) the state may not impose liability without fault, but with that limitation may adopt any other standard of media liability, and (2) in cases where the *New York Times* test of knowing or reckless falsity is not met, *the state may permit recovery for 'actual injury' but not presumed or punitive damages. Such 'actual injury'*

*was not confined to out-of-pocket loss, but may include 'impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.'" Jacron Sales Co.,* 276 Md. at 587, 350 A.2d at 692 (emphasis added).

This Court held that in Maryland a negligence standard was to be applied. Moreover, this Court said:

"Unless a conditional privilege is found to have existed, the plaintiff shall be required at the new trial of this case to establish the liability of the defendant through proof of negligence by the preponderance of the evidence, *and may recover compensation for actual injury, as defined in* Gertz *and outlined earlier, but neither presumed nor punitive damages,* unless he establishes liability under the more demanding *New York Times* standard of knowing falsity or reckless disregard for the truth." *Jacron Sales Co.,* 276 Md. at 601, 350 A.2d at 700 (emphasis added).

Thus, this Court indicated that in a negligent defamation action, once a right to recover has been established, recoverable damages are limited to compensation for proven actual injury, such as impairment of reputation and standing in the community, personal humiliation, mental anguish and suffering, resulting out-of-pocket loss, or any other resulting loss. Presumed or punitive damages cannot be recovered. The question whether Maryland law requires proof of a specific type of actual injury — impairment of reputation — in order to establish a right to recover was not raised, considered, or determined by this Court.

In *International Brotherhood of Electrical Workers, Local 1805, AFL-CIO v. Mayo,* 281 Md. 475, 379 A.2d 1223 (1977), this Court stated that in a negligent defamation action federal constitutional law did not require proof of impairment of reputation in order to establish a right to recover damages for actual injury, including damages for impairment of reputation, emotional distress, resulting

out-of-pocket loss, or any other resulting loss. However, this Court additionally said:

> "Appellant's sole contention here is that federal constitutional law precluded the damages [for emotional distress] awarded appellee, absent proof of actual injury to his reputation. Since the union does not attempt to argue that, constitutional considerations aside, state law would nevertheless have barred the damage award returned here, we do not reach that question." *Mayo,* 281 Md. at 482 n.4, 379 A.2d at 1227 n.4.

Thus, this Court explicitly left undetermined the question here, whether in a negligent defamation action Maryland law requires proof of impairment of reputation in order to establish a right to recover damages for emotional distress.

In *Metromedia, Inc. v. Hillman,* 285 Md. 161, 400 A.2d 1117 (1979), this Court considered the question whether subsequent to *Gertz* Maryland law continued to recognize any distinction between libel *per se* and libel *per quod.* This Court held that the only remaining distinction is that in an action for libel *per quod,* a private individual must allege and prove extrinsic facts showing that the publication is defamatory, whereas in an action for libel *per se,* no such allegation and proof is necessary. In reaching its result, this Court articulated what it then considered to be the minimal standard of pleading and proof in a defamation action. There, this Court said:

> "Suffice it to say the effect in Maryland of *Gertz* and *Jacron* is that in order for a declaration alleging libel in a Maryland court to withstand the test of a demurrer it must allege:
>
> "(1) a false and defamatory communication
>
>> a—which the maker knows is false and knows that it defames the other, or
>>
>> b—that the maker has acted in reckless disregard of these matters, or

c—that the maker has acted negligently in failing to ascertain them, and

"(2) that the statement was one which appears on its face to be defamatory, as, *e.g.,* a statement that one is a thief, or the explicit extrinsic facts and innuendo which make the statement defamatory, and

"(3) allegations of damages with some particularity, since *Gertz* and *Jacron* forbid presumed damages.

*In other words, as to (3) in Maryland a pleading to be sufficient must show a basis for believing that the plaintiff has sustained actual injury as defined in* Jacron." *Metromedia, Inc.,* 285 Md. at 171-72, 400 A.2d at 1123 (emphasis added).

The minimal standard expressed in (3) above was nothing more than a reiteration of the principle expressed in *Jacron* — that once a right to recover has been established, recoverable damages are limited to compensation for proven actual injury and that presumed or punitive damages cannot be recovered. That standard indicated only that, in the wake of *Gertz* and *Jacron,* it was necessary not only to plead and prove a right to recover, but also to plead and prove a recoverable damage — actual injury. Moreover, although the minimal standard expressed in (3) did not restrict the type of actual injury required to be pleaded and proven to impairment of reputation, this Court nonetheless did not determine the question here, whether under Maryland law it is necessary to prove impairment of reputation in order to establish a right to recover, because that question was neither raised nor considered. Under these circumstances, the question not reached in *Mayo* or *Metromedia, Inc.,* whether, in a negligent defamation action, it is necessary to prove impairment of reputation in order to establish a right to recover, remains to be determined here.

The majority here concludes that under Maryland law proof of harm to reputation is not essential to an action in

negligent defamation. Even a cursory examination of the majority's lengthy but sophistical analysis reveals that its conclusion is not affirmatively supported by any direct authority.

The majority relies essentially upon an analogy premised upon the post-*Gertz* position of Restatement (Second) of Torts § 620 (1977) (Restatement) on nominal damages.[1] Section 620 of the Restatement does, after *Gertz,* retain the previous common law rule that "[o]ne who is liable for a slander actionable per se or for a libel is liable for at least nominal damages." However, § 569 comment *c* of the Restatement explicitly states that "[t]he constitutionality of the common law rule that nominal damages may be recovered for a defamatory communication that is actionable per se, even in the absence of proof of harm to reputation, is now somewhat uncertain." Thus, the Restatement itself acknowledges that in the wake of *Gertz* its stated common law rule may no longer be constitutionally viable.

More important, the Restatement's post-*Gertz* view with respect to the continued existence of nominal damages is directly contrary to post-*Gertz* statements made by this Court, albeit in dicta, in *Metromedia.* There, writing for a unanimous Court, Judge Smith on two separate occasions unequivocally and without qualification stated that in the wake of *Gertz* nominal damages for a defamatory communication that is actionable *per se* no longer exist in Maryland. Thus, Judge Smith initially specifically said:

> "Since *nominal* or presumed *damages no longer exist,* in all libel actions Maryland pleading principles require the same type of pleading as to damages as was formerly necessary in libel per quod." *Metromedia, Inc.,* 285 Md. at 163, 400 A.2d at 1119 (emphasis added).

---

1. In addition to § 620 of the Restatement, the majority cites only two other treatises — L. Eldredge, *The Law of Defamation* § 95.b, at 541 (1978) and R. Sack, *Libel, Slander, and Related Problems* § VII.2.1, at 345 (1980). Both of these treatises do virtually nothing other than quote extensively from and rely upon the Restatement.

Subsequently, Judge Smith even more specifically said:

> "[U]nder *Gertz* we were no longer permitted to impose liability on the media without fault, as, *e.g.,* by permitting recovery of *nominal damages for calling a person a thief. . . ." Metromedia, Inc.,* 285 Md. at 168, 400 A.2d at 1121 (emphasis added).

Manifestly, the Restatement's post-*Gertz* rule on nominal damages is not only considered by the Restatement itself to be of questionable constitutional validity, but is also of questionable validity under present Maryland law. Under such circumstances, an analogy premised upon that rule can hardly provide adequate affirmative support to justify the majority's conclusion that under post-*Gertz* Maryland law it is not necessary to prove impairment of reputation in order to recover in a negligent defamation action.

Moreover, in my view, the majority's conclusion not only is antithetical to Maryland's historical concept of the nature and purpose of defamation actions, but also creates an internal inconsistency within Maryland tort law. Courts have long recognized that the gravamen as well as the fundamental purpose of defamation actions is to permit recovery for impairment of reputation. As long ago as 1605, in *The Case of de Libellis famosis; or of Scandalous Libels,* 5 Coke 125 (1605), it was reported:

> "He who kills a Man with his Sword in Fight is a great Offender, but he is a greater Offender who poisons another; for in the one Case he, who is openly assaulted, may defend himself, and knows his Adversary, and may endeavour to prevent it: But poisoning may be done so secretly that none can defend himself against it; for which Cause the Offense is the more dangerous, because the Offender cannot easily be known; and of *such Nature is libelling, it is secret, and robs a Man of his good Name, which ought to be more precious to him than his Life* ... and therefore when the Offender is known, he ought to be severely punished."

Similarly, in *Terwilliger v. Wands,* 17 N.Y. 54, 59, 6 N.Y.S. 196, 197 (1858), the New York Court of Appeals said:

> "The action for slander is given by the law as a remedy for 'injuries affecting a man's reputation or good name by malicious, scandalous and slanderous words, tending to his damage and derogation.' *It is injuries affecting the reputation only which are the subject of the action."* (Citations omitted) (emphasis added).

More recently, in *Monitor Patriot Co. v. Roy,* 401 U.S. 265, 275, 91 S.Ct. 621, 627 (1971), the United States Supreme Court said:

> "[D]amage to reputation is, of course, the essence of libel."

Commentators too have recognized that the gravamen as well as the fundamental purpose of defamation actions is to permit recovery for impairment of reputation. Thus, in W. Prosser, *Handbook of the Law of Torts* 737, 739 (4th ed. 1971), it is stated:

> "[D]efamation is an invasion of the interest in reputation and good name. This is a 'relational' interest, since it involves the opinion which others in the community may have, or tend to have, of the plaintiff. Consequently defamation requires that something be communicated to a third person that may affect that opinion. Derogatory words and insults directed to the plaintiff himself may afford ground for an action for the intentional infliction of mental suffering, but unless they are communicated to another the action cannot be one for defamation, no matter how harrowing they may be to the feelings. *Defamation is not concerned with the plaintiff's own humiliation, wrath or sorrow, except*

*as an element of 'parasitic' damages attached to an independent cause of action.*

. . .

Defamation is rather that which tends to injure 'reputation' in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him." (Footnotes omitted) (emphasis added).

Recognizing that the gravamen of the tort of defamation is impairment of reputation, courts in some jurisdictions have held, after *Gertz,* that in a negligent defamation action it is necessary to prove impairment of reputation in order to establish a right to recover damages for emotional distress. *See, e.g., Gobin v. Globe Publishing Co.,* 232 Kan. 1, 6, 649 P.2d 1239, 1243 (1982); *France v. St. Clare's Hosp. & Health Center,* 82 A.D.2d 1, 6, 441 N.Y.S.2d 79, 83 (1981); *Salomone v. MacMillan Publishing Co.,* 77 A.D.2d 501, 502, 429 N.Y.S.2d 441, 442 (1980). *But see, e.g., Firestone v. Time, Inc.,* 305 So.2d 172, 176 (Fla. 1974), *vacated on other grounds,* 424 U.S. 448, 96 S.Ct. 958 (1976); *Freeman v. Cooper,* 390 So.2d 1355, 1360 (La.App. 1980), *aff'd,* 414 So.2d 355 (La. 1982). Thus, in *Gobin v. Globe Publishing Co.,* 232 Kan. 1, 6, 649 P.2d 1239, 1243 (1982), the Supreme Court of Kansas said:

"We conclude that in this state, damage to one's reputation is the essence and gravamen of an action for defamation. *Unless injury to reputation is shown, plaintiff has not established a valid claim for defamation,* by either libel or slander, under our law. It is reputation which is defamed, reputation which is injured, reputation which is protected by the laws of libel and slander." (Emphasis added.)

The rationale underlying the concept that impairment of reputation must be proven in order to establish a right to recover damages for a false defamatory statement was stated as long ago as 1858 in *Terwilliger,* 17 N.Y. at 60-61, 6 N.Y.S. at 197-98. There the Court of Appeals of New York explained why, in a defamation action, humiliation and mental anguish are not, in and of themselves, sufficient to establish a right to recover. There, that Court said:

> "*It would be highly impolitic to hold all language, wounding the feelings and affecting unfavorably the health and ability to labor, of another, a ground of action; for that would be to make the right of action depend often upon whether the sensibilities of a person spoken of are easily excited or otherwise; his strength of mind to disregard abusive, insulting remarks concerning him; and his physical strength and ability to bear them.* Words which would make hardly an impression on most persons, and would be thought by them, and should be by all, undeserving of notice, might be exceedingly painful to some, occasioning sickness and an interruption of ability to attend to their ordinary avocations. There must be some limit to liability for words not actionable *per se,* both as to the words and the kind of damages; and a clear and wise one has been fixed by the law. The words must be defamatory in their nature; and must in fact disparage the character; and this disparagement must be evidenced by some positive loss arising therefrom directly and legitimately as a fair and natural result. In this view of the law words which do not degrade the character do not injure it, and cannot occasion loss." (Emphasis added.)

I agree with those courts that now require proof of impairment of reputation in order to establish a right to recover in a negligent defamation action.

In Maryland, this Court has frequently recognized that the gravamen of the tort of defamation is impairment of reputation. *Bowie v. Evening News,* 148 Md. 569, 572, 129 A. 797, 798 (1925); *Goldsborough v. Orem & Johnson,* 103 Md. 671, 680, 64 A. 36, 39 (1906); *Negley v. Farrow,* 60 Md. 158, 175 (1883). Thus, in *Goldsborough v. Orem & Johnson,* 103 Md. 671, 680, 64 A. 36, 39 (1906), this Court said:

"Unjustifiable assaults upon private character are most detestable, and in many instances are treated by the Courts as actionable wrongs, and sometimes are punished as criminal offenses. *'Reputation and honor are no less precious to good men than bodily safety and freedom. In some cases they are dearer than life itself. It is needful for the peace and welfare of a civilized commonwealth that the laws should protect the reputation as well as the person of the citizen.* In our law some kinds of defamation are the subject of criminal proceedings, as endangering public order or being offensive to public decency or morality. Vice Chancellor Malins in *Dixon v. Holden,* L.R. 7 Eq. 492, declared a man's reputation to be his property, and, if possible, more valuable than any other property. Chief Justice Best in *DeCrespigny v. Wellesly,* 5 Bing. 406, said that, if we reflect upon the degree of suffering occasioned by the loss of character, and compare it with the loss of property, the amount of the former injury far exceeds the latter. It was said by Fortescue, J., in *Button v. Hayward,* 8 Mod. that 'it was the rule of Holt, Chief Justice, to make words actionable whenever they *sound to the disreputation of the person* of whom they were spoken, and this was also Hale's and Twisden's rule, and I think a very good rule.'

"It is therefore the duty of everyone to forbear to speak, or write and publish false defamatory words of another, because he thereby commits a breach of duty which he owes to the other." (Additional emphasis added.)

Similarly, in *Bowie v. Evening News,* 148 Md. 569, 572, 129 A. 797, 798 (1925), this Court said:

"It may be stated generally that the right of the individual citizen *to rest secure in the possession of his good name, fame and reputation is a valuable privilege,* of which no one may deprive him through falsehood and malice without liability to him for the injury." (Emphasis added.)

Finally, this Court has traditionally defined as defamatory:

"[A]ny publication *which tends to injure one's reputation,* and expose him to hatred or contempt, if made without lawful excuse. . . ." *Negley v. Farrow,* 60 Md. 158, 175 (1883) (emphasis added).

Thus, this Court has recognized that the purpose of defamation actions is to permit recovery for impairment of reputation. It is consonant with that purpose to require proof of impairment of reputation in order to establish a right to recover in a negligent defamation action.

Moreover, to permit recovery for emotional distress in a negligent defamation action without proof of impairment of reputation would produce anomalous results. In *The American Law of Defamation Through* Gertz v. Robert Welch, Inc. *and Beyond: An Analytical Primer,* 61 Va.L.Rev. 1349 (1975), Joel D. Eaton described the difficulties inherent in permitting recovery in a negligent defamation action without requiring proof of impairment of reputation. There, he suggested that the application of such a principle would "work considerable mischief in the law of defamation." He pointed out that if such a principle is applied in a defamation action, "the insult, not the injury is the cause of action," a result that would constitute "a fundamental change in the underlying premise of the tort itself." In explanation of this conclusion, he commented:

"Despite the myriad complexities in the common law, 'damage to reputation is, of course, the essence of libel.' *A claim that one has been defamed is a*

*claim that his reputation has been injured, not that a falsehood has been published about him; it is the damage and not the insult which is the cause of action. The common law maintained this theoretical underpinning by presuming injury to reputation . . . .*

. . .

*Negligent infliction of mental distress by publishing a falsehood may well be a tort, but it is not the tort of defamation. Defamation is injury to reputation. If the essence of the law of defamation is to be preserved . . . a defamation plaintiff must first prove impairment of reputation before he is entitled to recover for personal humiliation and mental anguish and suffering."* 61 Va.L.Rev. at 1437, 1438-39 (footnotes omitted) (emphasis added).

There is still another difficulty inherent in the application of a principle permitting recovery in a negligent defamation action without proof of impairment of reputation. In Maryland, a cause of action for the intentional infliction of emotional distress exists. In such an action, damages for emotional distress ordinarily can be recovered without showing any physical injury. *Harris v. Jones,* 281 Md. 560, 566, 380 A.2d 611, 614 (1977). In Maryland, a cause of action for the negligent infliction of emotional distress also exists. However, where the only damages sought result from the negligent infliction of emotional distress, damages ordinarily cannot be recovered without proof of physical injury, " 'as manifested by an external condition or by symptoms clearly indicative of a resultant pathological, physiological, or mental state.' " *Vance v. Vance,* 286 Md. 490, 500, 408 A.2d 728, 733 (1979); *see Bowman v. Williams,* 164 Md. 397, 404, 165 A. 182, 184 (1933). Thus, ordinarily, where the only damages sought result from the infliction of emotional distress and there is no proof of "physical injury," damages can be recovered only if an intentional tort is shown. To permit the recovery of damages for the infliction of emo-

tional distress without proof of physical injury in a negligent defamation action is logically inconsistent with this general principle. It permits recovery for emotional distress resulting from a negligent act under circumstances ordinarily requiring an intentional rather than a negligent act.

In the wake of *Gertz's* and *Jacron's* elimination of presumed damages for impairment of reputation in negligent defamation actions, I am persuaded that in such actions, impairment of reputation must be proven in order to establish a right to recover. Such a result is mandated by Maryland's historical recognition that the fundamental purpose of defamation actions is to permit recovery for impairment of reputation. Additionally, to permit recovery for emotional distress in a negligent defamation action without proof of impairment of reputation would result in a fundamental change in the basic nature of the tort itself, a change that is antithetical to Maryland's historical recognition that the gravamen of the tort of defamation is impairment of reputation. Moreover, to permit recovery for emotional distress in a negligent defamation action under circumstances other than those ordinarily required in other types of negligence actions, creates an internal inconsistency within Maryland tort law.

In short, while federal constitutional law does not preclude recovery of damages for actual injury in a negligent defamation action despite the absence of proof of impairment of reputation, *Mayo,* 281 Md. at 482, 379 A.2d at 1227, in the wake of *Gertz,* I would hold that under Maryland law in a negligent defamation action it is ordinarily necessary to prove a specific type of actual injury — impairment of reputation — in order to establish a right to recover damages for emotional distress.

Here the record shows that in a negligent defamation action, Hughes proved emotional distress but failed to prove

impairment of reputation. Under these circumstances, Hughes was not entitled to recover. I would reverse the judgment of the trial court. Accordingly, I respectfully dissent.

Judge Eldridge authorizes me to state that he joins me in the views expressed herein.