**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JAMES N. SIMON,
Plaintiff-Appellant,

v.

UNION HOSPITAL OF CECIL COUNTY,
INCORPORATED; STEVE N. OWEN,
individually and as agent for Union
Hospital of Cecil County,
Incorporated; JOHN CORBIN,
individually and as agent for Union

Hospital of Cecil County,
Incorporated; ARCHIE J. SIRIANNI,
individually and as agent for Union
Hospital of Cecil County,
Incorporated; KEN LEWIS,
individually and as agent for Union
Hospital of Cecil County,
Incorporated,
Defendants-Appellees.

No. 98-2138

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(CA-97-1995-S)

Argued: September 24, 1999

Decided: October 20, 1999

Before WIDENER and MOTZ, Circuit Judges,
and BUTZNER, Senior Circuit Judge.

_____

Affirmed in part and reversed and remanded in part by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Robin Lynne Cohen, DICKSTEIN, SHAPIRO, MORIN & OSHINSKY, L.L.P., New York, New York, for Appellant. Linda S. Woolf, GOODELL, DEVRIES, LEECH & GRAY, L.L.P., Baltimore, Maryland, for Appellees. **ON BRIEF:** Donald L. DeVries, Jr., Teri Kaufman Leonovich, GOODELL, DEVRIES, LEECH & GRAY, L.L.P., Baltimore, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This diversity case arises out of Dr. James N. Simon's departure from his position as Chief of Anesthesia at Union Hospital of Cecil County, Maryland. Simon filed an eleven-count complaint against Union, its chief executive officer, and a number of his former colleagues (collectively, Union), alleging defamation, invasion of privacy, breach of contract, tortious interference with economic and contractual relations, intentional infliction of emotional distress, negligent misrepresentation, and negligence. The district court granted summary judgment to Union on all counts. See Simon v. Union Hospital of Cecil County, 15 F.Supp.2d 787 (D. Md. 1998). Simon appeals the defamation and breach of contract claims. We affirm in part, reverse in part, and remand for further proceedings.

I.

Dr. Simon served as Union's Chief of Anesthesia from January 1993 until his resignation in September 1996. Union alleges that, dur-

ing his tenure, Simon inappropriately added time to patient billing slips and engaged in other unethical conduct. Simon admits to adding time to the billing slips of patients for whom he was not the attending physician, but he maintains that this practice was within the standards of the profession. He denies any unethical conduct.

In 1996, Dr. Archie Sirianni and Dr. John Corbin, colleagues of Simon in the Anesthesia Department at the time, met with Steve Owen, President and CEO of Union, and Dr. Kenneth Lewis, Physician Advisor to the Medical Staff, to report Simon's practices. Sirianni and Corbin specifically alleged that Simon improperly altered patient billing slips and that Simon had added Sirianni's name to a patient's medical record when Sirianni had not participated in that patient's treatment.

On August 22, 1996, Union suspended Simon with pay, pending a final investigation. On September 6, Union's attorney sent Simon a letter indicating the hospital's intention to terminate his employment contingent on the final decision of the Board of Directors. The letter offered Simon an opportunity to make an "informal" appearance before the Board prior to its decision. Simon declined the hearing, and he resigned from the hospital staff on September 19, 1996.

After suspending Simon, and then again after Simon's resignation, Union reported the changes in Simon's status with the hospital to the Maryland Board of Physician Quality Assurance (BPQA) and the National Physician's Data Bank (NPDB). In the initial reports, Union checked boxes on the BPQA and NPDB forms suggesting that adverse action had been taken with respect to Simon's hospital privileges, when in fact his privileges remained technically intact. Ultimately, in May 1998, the Department of Health and Human Services voided Union's reports to the NPDB. Under the Health Care Quality Improvement Act, 42 U.S.C. § 11101, et seq., health care entities report only adverse actions taken against physician's privileges after professional peer review.

In January 1997, Simon began work with Atlantic Medical Anesthesia Associates in New York. Atlantic conditioned the continuation of Simon's employment on his obtaining privileges at South Nassau Community Hospital. During its credentialing process in May 1997,

3

South Nassau discovered the NPDB adverse action reports against Simon. Lawrence Weiss, a South Nassau administrator, and Dr. Steven Shoum, of Atlantic Medical, then contacted Union to investigate the basis of the NPDB reports. Before agreeing to permit its officials to speak with Weiss and Shoum, Union obtained a waiver from Simon releasing from liability "any and all individuals and organizations who provide information to the hospital, or its medical staff, in good faith and without malice concerning my professional competence, ethics, character and other qualifications for staff appointment, and clinical privileges."

Owen, Lewis, and Corbin, who had succeeded Simon as Chief of Anesthesia, then spoke to Weiss and Shoum in a series of telephone conversations in May 1997. Each of the three Union officials told Weiss and Shoum about Simon's allegedly improper alteration of billing slips and the medical record. Simon contends that Owen, Lewis, and Corbin made two additional charges. Owen and Lewis allegedly said that the federal Health Care Financing Administration had imposed a $100,000 penalty on Union for Simon's billing practices. Lewis and Corbin allegedly charged Simon with having stolen cryopain equipment from the hospital for use in his own medical practice. South Nassau subsequently denied Simon's application for privileges, and Atlantic Medical terminated Simon's employment.

II.

The district court granted summary judgment to Union on all claims. We review de novo an order granting summary judgment. See Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988). Summary judgment is appropriate only when, viewing the record as a whole, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c).

With respect to Simon's contract claims, the district court held as a matter of law that Simon's employment contract did not preclude Union from suspending him, and that Union fulfilled its obligation under the contract to offer Simon a "hearing" before termination by offering him an informal appearance before the Board of Directors. See Simon, 15 F.Supp.2d at 798. The district court also held that the

4

waiver Simon signed before the Union officials spoke with Weiss and Shoum superseded any contractual protections against disclosure of information to which Simon might have been entitled under a "resignation agreement." See id. at 797-98. As to the defamation claims, the district court held that Sirianni and Corbin's initial reports to Lewis and Owen were protected by a common law qualified privilege for employer-employee communications, see id. at 796-97; that Union's reports to the BPQA and NPDB were protected by a related qualified privilege for statements made in the mutual legitimate interest of the speaker and the recipient, see id. at 795-96; and "Simon had not provided sufficient evidence to permit a reasonable juror to find that" Union officials' statements to Weiss and Shoum were made "in bad faith or with malice, see id. at 793-94. We affirm the grant of summary judgment on Simon's contract claims and most of his defamation claims on the basis of the district court's opinion.

For the following reasons, however, we reverse as to two specific statements allegedly made by the Union administrators to Weiss and Shoum. A material issue of fact exists as to whether Union defamed Simon by indicating that his conduct had led the Health Care Financing Administration to impose a $100,000 fine on the hospital, and by stating that he had stolen the hospital's cryo-pain equipment.

In Maryland, a plaintiff who is not a public figure ordinarily must prove four elements to establish a prima facie case of defamation: (1) a defamatory communication; (2) falsity; (3) fault; and (4) harm. See, e.g., Shapiro v. Massengill, 105 Md. App. 743, 772, 661 A.2d 202, 216-17, cert. denied, 341 Md. 28, 668 A.2d 36 (1995). If a statement constitutes defamation per se, however, harm to reputation is presumed. See Hearst Corp. v. Hughes, 297 Md 112, 125, 466 A.2d 486, 493 (1983). Damages may be awarded on the basis of that presumption when the plaintiff has demonstrated malice by the speaker. See id., 297 Md. at 125-26; Shapiro, 105 Md. App. at 773-74; Gooch v. Maryland Mechanical Systems, 81 Md. App. 376, 393-94, 567 A.2d 954, 962 (1990).

With regard to the first element, a genuine issue of material fact exists as to whether statements as to the $100,000 fine and cryo-pain equipment were made. Although the Union officials deny having made the statements, Simon has offered concrete evidence, in the

5

form of affidavits and deposition testimony from Weiss and Shoum, that the Union officials did indeed make these statements to Weiss and Shoum. As to the second element, the hospital concedes that, if made, the two statements were false.

The terms of Simon's waiver governs the third element--fault. The waiver released the Union administrators from liability for statements made "in good faith and without malice concerning[Simon's] professional competence, ethics, character and other qualifications." Maryland law defines malice, in the context of private party defamation, as "knowledge of falsity or reckless disregard for the truth." Marchesi v. Franchino, 283 Md. 131, 139, 387 A.2d 1129, 1133 (1978). A jury could reasonably infer malice from the specificity and inflammatory nature of the alleged statements, and from Union's concession that, if made, the statements were false.

Union argues, however, that Simon cannot establish the final element of a defamation claim--harm--because South Nassau and Atlantic Medical assertedly did not rely on these statements in their decisions to deny Simon clinical privileges and to terminate his employment. At oral argument, Union suggested more generally that, in the total context of the communications between Weiss and Shoum and the Union officials, the statements were too insignificant to have caused harm. But Simon has produced evidence that creates an issue of fact as to the statements' effect. Shoum stated in his affidavit that Atlantic Medical's decision to terminate was a "direct result of the comments made by Lewis and Corbin," without specifying which comments. Weiss, among several other explanations, testified that South Nassau's decision was based on "a total review of everything that we heard" and on its estimation of Simon's"moral character."

Moreover, the statements, if made, were defamatory per se under Maryland law, and the harm element is therefore presumed. A statement is defamatory per se when it "adversely affects an employee's fitness for the proper conduct of his business." Shapiro, 105 Md. App. at 775 (quoting Hearst, 297 Md. at 118).

> Words spoken of a person in his office, trade, profession, business or means of getting a livelihood, which tend to expose him to the hazard of losing his office, or which

6

charge him with fraud, indirect dealings or incapacity and
thereby tend to injure him in his trade, profession, or busi-
ness, are actionable without proof of special damage, even
though such words if spoken or written of an ordinary per-
son, might not be actionable per se.

Kilgour v. Evening Star Co., 96 Md. 16, 23-24, 53 A.2d 716 (1902)
(quoted in Shapiro, 105 Md. App. at 776).

In harmonizing constitutional and common law principles, the
Maryland courts have held that the Supreme Court's decision in Gertz
v. Robert Welch, Inc., 418 U.S. 323 (1974), bars the award of dam-
ages from a statement defamatory per se when the plaintiff has merely
proven negligence on the part of the speaker. Gertz does not proscribe
the award of damages, however, when the plaintiff has shown actual
malice. Hearst, 297 Md. at 125-26; Shapiro, 105 Md. App. at 773-74.
Here, because a reasonable jury could find "knowledge of falsity or
reckless disregard of the truth" on the part of Union officials in mak-
ing these two statements the resulting harm to Simon is presumed.

III.

In sum, we reverse and remand for further proceedings the grant
of summary judgment to Union on the defamation claims relating to
the $100,000 fine and the cryo-pain equipment. We affirm on all
other respects.

AFFIRMED IN PART AND REVERSED
AND REMANDED IN PART

7