JOSEPH FRANCE, Respondent, v ST. CLARE'S HOSPITAL AND HEALTH CENTER, Appellant, et al., Defendant.

First Department, July 9, 1981

APPEARANCES OF COUNSEL

*Edward D. Cavanagh* of counsel *(Thomas J. Martin* with him on the brief; *Kelley Drye & Warren,* attorneys), for appellant.

*Abraham Werfel* of counsel *(Pops & Estrin, P. C.,* attorneys), for respondent.

## OPINION OF THE COURT

SULLIVAN, J.

Plaintiff sues for libel, alleging that in a letter to a third party St. Clare's Hospital falsely stated that he was afflicted with venereal disease, as a result of which he suffered emotional stress, disruption of his ten-year relationship with his girlfriend, and sexual impotence.

The facts are not in dispute and may be briefly stated. On February 3, 1977, plaintiff, at the request of Leonard Jeffries, a co-worker, donated blood at St. Clare's for the benefit of Jeffries' brother. Blood was drawn and, as is required, thereafter subjected to a series of routine tests, including the Venereal Disease of Research Laboratory (VDRL) test, designed to detect syphilis.

Plaintiff's blood sample reacted positively to the VDRL test, and use of his blood was therefore prohibited under New York City Department of Health regulations. Unable to reach plaintiff directly, James Kim,[1] the supervisor of the Department of Anatomic and Clinical Pathology at St. Clare's, sent the allegedly defamatory letter, dated February 17, 1977, to Jeffries which, insofar as relevant, stated as follows: "Joe France has a blood disease that prevents us from using his blood for any patient due to the danger of transmitting the disease to a patient. May we suggest that he visit his private physician or go to the Department of Health for a test for VDRL."

Kim's purpose in writing was both to inform Jeffries

---

1. Although named as a defendant the action against Kim was dismissed for lack of personal jurisdiction, from which determination no appeal has been taken.

that since plaintiff's blood could not be used he would have to find another donor, and also to notify plaintiff, through Jeffries, of the need for additional blood tests to determine the precise nature of the irregularity which the blood tests had disclosed. After receiving the letter, Jeffries telephoned plaintiff, informed him of its contents, and thereafter delivered the letter to him. Plaintiff subsequently voluntarily disclosed the contents of the letter to the woman with whom he had been living for the past 10 years. Subsequent follow-up tests indicated that plaintiff was not suffering from syphilis or any other venereal disease.

Plaintiff claims that the letter was defamatory in that it falsely attributed a venereal disease to him. He alleges that suspicions over the origin or such a disease, and the recriminations which followed, caused a coolness to develop between him and his girlfriend, as a result of which he began to suffer from periods of sexual impotence. No claim is made, however, that Jeffries divulged the contents of the letter to anyone other than plaintiff, or that Kim discussed the letter with anyone besides Jeffries. Unable to show that his standing in the community has been in any way diminished or otherwise affected by the supposedly defamatory communication, plaintiff, claiming a libel per se, relies upon presumed damage to his reputation. He does not allege special damages and has not sought medical attention to treat his claimed emotional trauma and impotence. Thus, he has not suffered any out-of-pocket loss by reason of the alleged libel.

When plaintiff moved for summary judgment striking the answer, St. Clare's cross-moved for like relief dismissing the complaint on the grounds that the purportedly defamatory statement (1) was not libelous; (2) was protected by a qualified privilege which could be overcome only by proof of malice, which proof plaintiff had failed to introduce; and (3) had not caused injury to plaintiff. Special Term denied both motions. Only St. Clare's has appealed. We would reverse, grant St. Clare's motion for summary judgment, and dismiss the complaint.

Irrespective of whether the common-law distinction between libel and slander—that in the former damage is

presumed,[2] while in the latter, with the exception of certain types of defamation, actual damage had to be proved[3]— ever had any validity in this State's jurisprudence (see *Hinsdale v Orange County Pub.*, 17 NY2d 284; *O'Connell v Press Pub. Co.*, 214 NY 352; *Sydney v Macfadden Newspaper Pub. Corp.*, 242 NY 208), it is clear that New York followed the common-law rule that any publication of a false imputation of a venereal disease was actionable without the necessity of alleging or proving any actual damage. *(Williams v Holdredge*, 22 Barb 396; *Hewit v Mason*, 24 How Prac 366.) The publication was considered defamatory per se because loathsome diseases such as venereal disease were regarded as incurable, with ostracism from society the inevitable result. (See Prosser, Torts [4th ed], pp 756-757.)

Recent decisions interpreting the First Amendment, however, have drastically changed the law of defamation, eliminating the common-law doctrine of strict liability as well as the correlative principle of presumed damages. Absent proof of harm to his reputation a plaintiff now may not recover on a claim of a defamation unless, of course, he can prove malice. In *Gertz v Robert Welch, Inc.* (418 US 323, 349) the Supreme Court limited recovery in defamation cases where plaintiffs are unable to establish "knowledge of falsity or reckless disregard for the truth" to compensation for actual injury. The court found that "the States have no substantial interest in securing for plaintiffs * * * gratuitous awards of money damages far in excess of any actual injury." *(Supra,* at p 349.) Thus, it reasoned, First Amendment considerations dictate "that state remedies for defamatory falsehood reach no farther than is necessary to protect the legitimate interest involved." *(Supra,* at p 349.)

This court has itself recently affirmed that "[t]he law restricts compensation to 'actual injury' and does not permit a presumption of damaged reputation unless it can be shown that publication was with 'knowledge of falsity or reckless disregard for the truth.' " *(Salomone v MacMillan*

---

2. See *Thorley v Lord Kerry* (4 Taunt 355, 128 Eng Rep 367).

3. See *King v Lake* (Hardves Rep 470, 145 Eng Rep 552).

*Pub. Co.*, 77 AD2d 501, 502, citing *Gertz v Robert Welch, Inc., supra;* see, also, *Moran v Hearst Corp.*, 40 NY2d 1071, 1072 [concurring opn of FUCHSBERG, J.].)

St. Clare's has not been shown to have acted with a reckless disregard for the truth and, indeed, plaintiff concedes that Kim did not act with malice in sending the allegedly libelous letter. The hospital performed blood tests on six volunteers whom Jeffries brought to it to donate blood. After the tests, two of the potential donors were rejected. One was plaintiff, whose blood showed positive signs of disease. The hospital was put on notice by the tests that plaintiff might be the carrier of veneral disease. Thus, its communication to Jeffries was made not with a conscious disregard for the truth, but as a result of a scientific test, and any award for defamation must, of necessity, be limited to compensation for actual damages.

While conceding that under *Gertz* (418 US 323, *supra)* in the absence of malice, the State's interest in protecting a defamed person's reputation reaches no further than compensation for actual injury, the dissent would, nevertheless, deny summary judgment because the issue of actual damages "cannot be determined" on such a motion. But to find an issue on damage in the face of the utter lack of proof in this record of actual injury to plaintiff's reputation is to ignore the holding of *Gertz.* Without proof of any actual injury plaintiff is left to argue that where, as here, the statement is defamatory per se he need not allege or prove special damages. But this precise principle was rejected by the Supreme Court in *Gertz,* and this court in *Salomone (supra).*

Recognizing that the record is barren of any evidence whatsoever tending to show that his reputation in the community was in any way diminished by publication of the alleged defamatory letter, plaintiff attempts to shift the focus of his claim away from loss of reputation and, instead, seeks recovery for purported emotional trauma and periods of sexual impotence with his girlfriend. Thus, by naked allegations of libel, per se, plaintiff attempts to bootstrap claims for emotional distress. These claims are not compensable, however, since such damages are recoverable in a defamation action only when concomitant with a loss

of reputation. We believe that our holding in *Salomone* (77 AD2d 501, *supra)* is dispositive. There, as here, the plaintiff suing for libel, claimed damages for loss of reputation and, for embarrassment and anguish. We noted (p 502): "Without doubt, plaintiff has suffered embarrassment and anguish. We must, nonetheless, dismiss his complaint because he has suffered no damages that are compensable in law. Plaintiff pleads no special damage. He concedes that he has sustained no financial loss or physical damage attributable to appellants' publication. He claims damages for loss of reputation and for mental anguish. He has been unable to come forth with any proof of loss of reputation because he knows of no one who believes he was a child molester or thinks less of him due to the publication. The law restricts compensation to 'actual injury' and does not permit a presumption of damaged reputation unless it can be shown that publication was with 'knowledge of falsity or reckless disregard for the truth' *(Gertz v Robert Welch, Inc.*, 418 US 323, 349). Plaintiff has provided no such evidence and appellants' evidence is to the contrary. As to the claim for mental anguish, it has long been held in this State that such damage is compensable only when it is concomitant with loss of reputation *(Terwilliger v Wands*, 17 NY 54; *Wilson v Goit*, 17 NY 442). While the United States Supreme Court, in *Gertz*, would appear to have allowed the States sufficient latitude to include in the definition of 'actual injury' mental anguish unaccompanied by loss of reputation, this has not occurred in this State."

Since plaintiff cannot show actual damage to his reputation as a result of publication of the allegedly libelous letter, and since none may be presumed, the complaint must be dismissed. In view of this determination we need not reach the other contentions raised on appeal.

Plaintiff requests that he be permitted to amend the complaint to assert a cause of action for injurious falsehood. Not having been raised at Special Term, this issue is not properly before us. *(Chase Manhattan Bank, N. A. v Marcovitz*, 56 AD2d 763.) Moreover, the essence of this tort is the "infliction of intentional harm". (See *Penn-Ohio Steel Corp. v Allis Chalmers Mfg. Co.*, 74 AD2d 441, 444.) As al-

ready noted, plaintiff concedes that Kim acted without malice. Nor does anything in this record support the conclusion that Kim acted recklessly or without regard to the consequences in publishing the alleged defamatory letter.

Accordingly, the order, Supreme Court, New York County (EVANS, J.), entered September 9, 1980, denying the motion of defendant St. Clare's Hospital for summary judgment dismissing the complaint should be reversed, on the law, without costs and disbursements, and the motion granted.

BLOOM, J. (dissenting). This is an action for defamation arising out of the following circumstances:

France, the plaintiff in this action, and Leonard Jeffries are friends. Jeffries' brother Norman was hospitalized and required blood transfusions. Jeffries requested six of his friends, including France, to make blood donations and they agreed to do so. France appeared at St. Clare's Health and Hospital Center (St. Clare's) where blood was drawn in the usual manner, without incident. In conformity with hospital practices and Federal, State and local laws the blood was subjected to a number of tests. One of these tests was the Venereal Disease of Research Laboratory test (VDRL), designed to detect syphilis. The reaction of France's blood to the test was considered to be positive. By consequence, the use of his blood was barred for use in transfusions by regulation of the New York City Department of Health.

Upon receipt of the results of the test, St. Clare's through the supervisor of its Department of Anatomic and Clinical Pathology, addressed a letter to Jeffries informing him that, of the six donors, his brother could be credited with four units of blood only. The letter explained the reason for the inability to credit Norman with the additional two units. Of plaintiff the letter said: "Joe France has a blood disease that prevents us from using his blood for any patient due to the danger of transmitting the disease to a patient. May we suggest that he visit his private physician or go to the Department of Health for a test for VDRL".

Jeffries transmitted the information to France. Understandably, this communication was emotionally traumatic.

While plaintiff was unmarried, he had "a girlfriend with whom he had been living in a monogamous relationship for the past ten years". He notified his girlfriend of the information transmitted to him through Jeffries. As a result, he asserts, a coolness grew up between them. It is his contention that in consequence of the contents of the St. Clare's letter which, by subsequent tests, was proven to be false he has suffered periods of impotence.

After issue had been joined France moved for summary judgment. St. Clare's moved for the same relief asserting that the statement contained in its letter to Jeffries was not libelous; that is was protected by a qualified privilege which could be overcome only by a showing of actual malice which plaintiff had failed to establish; and that, in any event, no damage could be demonstrated. Special Term denied both the motion and the cross motion. While France has accepted Special Term's conclusion that issues of fact exist which require a trial, St. Clare's by this appeal, takes issue therewith.

I

It would be pointless to trace, in detail, the evolution of the law of defamation initiated by *New York Times Co. v Sullivan* (376 US 254), in the endeavor to insure the free exercise of rights protected by the First Amendment. That case created an immunity for the media provided that the defamatory statement was made without malice or under circumstances which did not evince a reckless disregard for the truth. Through permutations of the qualified privilege created by *Sullivan*, originally limited to public officials *(New York Times Co. v Sullivan*, 376 US 254, *supra)*, it was broadened to include public figures *(Curtis Pub. Co. v Butts, Associated Press v Walker*, 388 US 130); and persons involved in matters of public concern *(Rosenbloom v Metromedia*, 403 US 29).

Since none of these cases is here applicable, it is sufficient for our purposes to use, as a point of beginning, *Gertz v Robert Welch, Inc.* (418 US 323) which dealt with the defamation by the media of a private individual. In that case Elmer Gertz, a reputable Chicago attorney had been re-

tained to bring suit against Richard Nuccio, a Chicago policeman who had shot and killed a youth named Nelson. Nuccio had been prosecuted for the killing and was ultimately convicted of second degree murder. Welch published a magazine called "American Opinion", an organ of the John Birch Society. Shortly after the institution of the action by the Nelsons against Nuccio, "American Opinion" published an article in which it depicted Nuccio's criminal trial as a frameup and part of the Communist campaign against the police. Gertz was depicted as the architect of the frameup, and labeled a "Leninist" and a "Communist fronter". Additionally, he was referred to as a former official of the "Marxist League for Industrial Democracy, originally known as the Intercollegiate Socialist Society, which has advocated the violent seizure of our government". *(Gertz v Robert Welch, Inc., supra,* p 326.)

None of these charges were true. Gertz filed suit in the United States District Court for the Northern District of Illinois, basing jurisdiction on diversity. At trial, the court ruled that Gertz was neither a public official nor a public figure and hence, neither *Sullivan* nor *Butts (supra)* was applicable. After a jury verdict in favor of Gertz the trial court changed its mind and ruled that the doctrines laid down in *Sullivan* and *Butts* were to be applied. Accordingly, it entered judgment in favor of Welsh notwithstanding the jury's verdict.

The Supreme Court noted the competing tensions between First Amendment rights and the right to compensation for wrongful hurt to one's reputation. "The First Amendment requires that we protect some falsehood in order to protect speech that matters" *(Gertz v Robert Welch, Inc.,* 418 US, at p 341).

Private persons, however, do not, as do public officials and public figures, voluntarily expose themselves to the increased risk of defamatory falsehood. They are, therefore, entitled to greater protection. Hence, concluded the court: "so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a *publisher* or *broadcaster* of defamatory falsehood injurious to a private individual. This approach * * * recognizes the strength of the legitimate state interest

in compensating private individuals for wrongful injury to reputation, yet shields the *press* and *broadcast* media from the rigors of strict liability for defamation" *(Gertz v Robert Welch, Inc.*, 418 US, at pp 347-348; emphasis supplied).

Nevertheless, the court cautioned that: "[i]t is necessary to restrict defamation plaintiffs who do not prove knowledge of falsity or reckless disregard for the truth to compensation for actual injury * * * Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering * * * and all awards must be supported by competent evidence concerning the injury" *(Gertz v Robert Welch, Inc.*, 417 US, at pp 349-350).

In *Hutchinson v Proxmire* (443 US 111) the private individual doctrine was extended to a research scientist who was lampooned in a press release issued by a United States Senator. The release awarded the Federal agency which funded his research the "Golden Fleece of the Month Award" in testament to its egregious waste of public funds. (For other extensions of the private individual doctrine see *Time, Inc. v Firestone*, 424 US 448, and *Wolston v Reader's Digest Assn.*, 443 US 157; see, also, Rosen, Media Lament— The Rise and Fall of Involuntary Public Figures, 54 St John's L Rev 487.)

## II

Against this backdrop, we come to the specific issues raised by St. Clare's in support of its motion for summary judgment. It contends that the statement contained in its letter to Jeffries is not defamatory as a matter of law, and that, in any event, the statement is privileged. Finally, it contends that France has not suffered damages by consequence of the letter and, absent proof of damage, no action will lie.

Initially, it is important to note that the cases dealing with the private individual doctrine, with the possible exception of *Hutchinson v Proxmire* (443 US 111, *supra)*, are all media cases. However, in the context of the facts before

us, we attribute no emphasis to this distinction. St. Clare's, while a private institution, is eleemosynary in nature. Accordingly, we are, for the limited purposes of this appeal, ready to attribute to it the same privilege accorded by the Constitution to the press and broadcast media when dealing with a private individual.

We treat first with St. Clare's contention that the statement contained in its letter of February 17, 1977 is not defamatory as a matter of law. It is black-letter law that the words used will be given their ordinary and accepted meaning (34 NY Jur, Libel and Slander, § 3). They are to be tested by their effect upon the average reader *(James v Gannett Co.*, 40 NY2d 415; *Mencher v Chesley*, 297 NY 94; *Everett v Gross*, 22 AD2d 257; *Nowark v Maguire*, 22 AD2d 901). Equally fundamental is the concept that " ' 'A writing is defamatory—that is, actionable without allegation or proof of special damage—if it tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number in the community, even though it may impute no moral turpitude to him'. And to that listing of the defamatory should be added a writing which tends to disparage a person in the way of his office, profession or trade' " *(Tracy v Newsday, Inc.*, 5 NY2d 134, 135-136, quoting from *Nicholas v Item Publishers*, 309 NY 596, 600-601; see, also, *Hinsdale v Orange County Pub.*, 17 NY2d 284). Included among the categories of statements which are actionable per se, i.e., without allegation of special damage, are words which impute a venereal disease (34 NY Jur, Libel and Slander, § 28).

Here the statement that "Joe France has a blood disease" preventing the use of his blood for transfusion purposes and suggesting that he undergo a VDRL test was a clear imputation that plaintiff suffered from syphilis. As such, it is actionable per se. In these circumstances we deem it unnecessary that the complaint allege special damage *(James v Gannett Co.*, 40 NY2d 415, *supra;* cf. *Robart v Post-Standard*, 52 NY2d 843).

We turn next to the claim of privilege. St. Clare's does not purport to assert absolute privilege. Indeed, it is clear that

it cannot do so. At best the privilege asserted is a qualified one *(Toker v Pollak*, 44 NY2d 211). Such a privilege exists when the statement alleged to be defamatory is fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his own interest is concerned (Prosser, Torts [4th ed], p 786; 1 Seelman, The Law of Libel and Slander [rev ed], p 335). It is applicable only when publication is made to those persons entitled to know of it and whose knowledge is believed necessary to the furtherance of the duty or interest involved (Prosser,Torts [4th ed], p 792). In sum, a qualified privilege confers immunity upon the person making the statement claimed to be defamatory where the statement is made without malice and is made to a person to whom there is a duty to disclose.

Here, it is plain that St. Clare's having concluded that plaintiff was suffering from a blood disease, was under a duty to notify him of that condition. It had the right to believe that he was entitled to know of its finding so that he might take such action as reasonably he believed to be necessary. Had the letter announcing the finding been directed to France there would have been a substantial basis for the defense of qualified privilege. However, the notice did not go to him; it went to Jeffries. Thus, there was publication to one who, it is claimed, was not entitled to know.

Thus, the defense of qualified privilege is reduced to a question of fact which ought await trial for resolution.

The final issue tendered is that of damages. Defendant asserts that plaintiff alleges no damages of which the law may take cognizance and that, in any event, France's damages resulted, at least in part, from his own disclosure to his girlfriend and he may not recover therefor. At common law a sharp distinction was made between oral and written defamation. When the defamation was oral, proof of special damage was required to make it actionable, except in special circumstances. Only when the words were slanderous per se, i.e., they imputed to the persons defamed the commission of a crime; a loathsome disease (included amongst which was a venereal disease) ; unfitness for a business, trade or profession; or unchastity in a woman (Prosser, Torts [4th ed], pp 754-780), were they actionable without

special damage. Absent these cases the spoken word, no matter how defamatory, was actionable only upon proof of special damage. A presumption of damage flowing from the defamatory words was impermissible.

Defamation in written form, i.e., libel, was in another category. Once the wrong was established damage was assumed even in the absence of proof (Prosser, Torts [4th ed], p 762). As a result, substantial damages could be awarded by way of compensation for supposed, rather than actual harm *(Sydney v Macfadden Newspaper Pub. Corp.*, 242 NY 208).

*Gertz* (418 US 323, *supra*) modified these rules. While it permits action by a private individual, it mandates that State interest in protecting the reputation of a defamed person reach no further than compensation for actual injury. It outlaws both presumed and punitive damages. It limits "defamation plaintiffs who do not prove knowledge of falsity or reckless disregard for the truth to compensation for actual injury * * * Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering" *(Gertz v Robert Welch, Inc.*, 418 US, at pp 349-350). Allegation of special damage is unnecessary *(Tracy v Newsday, Inc.*, 5 NY2d 134, *supra*) so long as recovery is so limited as to eliminate presumptive and punitive damages. That is a matter for the trial court. It cannot be determined on a motion for summary judgment.

Nor need we concern ourselves overlong with the contention that France was the source of his own injury by reason of his disclosure of the contents of the letter from St. Clare's to his girlfriend. While the complaint does not disclose France's age, it does indicate that he had "a girlfriend with whom he had been living in a monogamous relationship for the past ten years". Hence, it may fairly be inferred that he was at least 30 years old. It is, therefore, fair to conclude that St. Clare's knew or reasonably should have known that he was part of a familial relationship. Whether that relationship was and is of the conventional or unconventional familial type is of no moment.

Given these circumstances St. Clare's should have anticipated such disclosure. Certainly, France was under a *duty* to disclose the information placed at his disposal to his bedmate. Had the information conveyed to Jeffries and through Jeffries, transmitted to France, been accurate and had France continued in the interchange of sexual favors with his girlfriend without disclosure, and in the process infected her, there is serious question as to whether he would not have been guilty of an assault. Hence, transmission of the information was not only morally and medically proper; it was also legally correct. Accordingly, it is for a jury to decide whether St. Clare's can escape responsibility for the chain of consequences set in motion by its act.

Giving due consideration to the totality of the material before us and to the law applicable thereto, I conclude Special Term correctly denied St. Clare's motion for summary judgment. I would, therefore, affirm.

BIRNS, J. P., and MARKEWICH, J., concur with SULLIVAN, J.; BLOOM and FEIN, JJ., dissent in an opinion by BLOOM, J.

Orders, Supreme Court, New York County, both entered on September 9, 1980, reversed, on the law, without costs and without disbursements, and the motions for summary judgment granted.