JOAN V. HARRIS, Respondent, v PAUL HIRSH, Appellant.
[643 NYS2d 556]

At the time of the alleged wrong herein, plaintiff was a Metro North crew dispatcher and defendant was her supervisor. The complaint alleges that in the presence of two other persons, defendant stated to plaintiff: "Do you have a problem? You take drugs. I've worked in the Towers and I know a person who is on drugs and you look like one. I've been thinking of sending you for a drug test."

The verdict was not against the weight of the evidence with respect to the jury determination that the allegedly defamatory statement was actually made. However, the evidence of malice *was* insufficient for the jury to determine that the qualified privilege no longer shielded defendant.

In this case, there was no dispute at the trial that the defendant was acting as a manager and the purpose of the meeting between the defendant and plaintiff at which others were present was within the scope of his duties. Therefore, it was for the court, not the jury, to decide whether a qualified privilege existed (*see, Bardey v Brooke-Hitching,* 191 AD2d 243). Moreover, it was undisputed that such a qualified privilege existed. The IAS Court had previously found such privilege to exist and that finding was not appealed.

Plaintiff, therefore, had the burden of demonstrating that defendant acted with malice, a burden that she did not meet. In *Liberman v Gelstein* (80 NY2d 429, 437-438), the Court of Appeals clarified the governing principles by noting: "The shield provided by a qualified privilege may be dissolved if plaintiff can demonstrate that defendant spoke with 'malice' (*see, Park Knoll Assocs. v Schmidt,* 59 NY2d, at 211, *supra*). Under common law, malice meant spite or ill will (*see, Stillman v Ford,* 22 NY2d, at 53, *supra*; *Shapiro v Health Ins. Plan,* 7 NY2d, at 61, *supra*). In *New York Times Co. v Sullivan* (376 US 254), however, the Supreme Court established an 'actual malice' standard for certain cases governed by the First Amendment: 'knowledge that [the statement] was false or * * * reckless disregard of whether it was false or not' (376 US, at 279-280)."

The Court of Appeals, while acknowledging that the term "malice" has "become somewhat confused", concluded that the term "has now assumed a dual meaning" and recognized that "the constitutional as well as the common-law standard will suffice" to defeat this conditional privilege (*supra,* at 438).

In the case at bar, there was no showing by plaintiff that, at the time the statement was made, the defendant exhibited "spite or ill will". All of the evidence submitted pointed to the exact opposite, that even if defendant had erred or been too quick to judge, he did so in furtherance of proper work goals and *not* from "spite or ill will". Thus, the jury could not reasonably conclude the "malice was the one and only cause for the publication" (*Stukuls v State of New York,* 42 NY2d 272, 282).

Nor was there evidence of malice under the constitutional standard. As noted, under this standard, the plaintiff must

demonstrate that the " 'statements [were] made with [a] high degree of awareness of their probable falsity' " and there " 'must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of [the] publication' " (*Liberman v Gelstein, supra,* at 438, citing *Garrison v Louisiana,* 379 US 64, 74; *St. Amant v Thompson,* 390 US 727, 731). The proof submitted by plaintiff established, at best, that defendant did not know, with certainty, whether plaintiff was a drug user, when he made the statements. There certainly was no showing that defendant made the statements complained of with a "high degree of awareness of their probable falsity" or that he entertained "serious doubts" as to their truth. Thus, the evidence before the jury failed to prove that defendant acted with malice sufficient to overcome the qualified privilege he possessed.

Moreover, in addition to her failure to prove malice, the plaintiff failed to prove that she sustained actual compensatory damages. While the case was submitted to the jury on the theory of slander per se, it should have been submitted under the slander per quod rule.

The four classic exceptions to the requirement that plaintiff prove actual damages consist of (1) statements charging plaintiff with a serious crime; (2) statements that tend to injure plaintiff in her trade, business or profession; (3) statements that plaintiff has a loathsome disease; or (4) imputing unchastity to a woman (*see, Moore v Francis,* 121 NY 199, 203). The trial court charged slander per se upon the basis that defendant's statement was one that tended to harm plaintiff in her "trade, business or profession". However, the Court of Appeals has noted: "That exception, however, is 'limited to defamation of a kind incompatible with the proper conduct of the business, trade, profession or office itself. The statement must be made with reference to a matter of significance and importance for that purpose, rather than a more general reflection upon the plaintiff's character or qualities' (Prosser § 112, at 791). Thus, 'charges against a clergyman of drunkenness and other moral misconduct affect his fitness for the performance of the duties of his profession, although the same charges against a business man or tradesman do not so affect him' (Restatement § 573, comment *c*)." (*Liberman v Gelstein, supra,* at 436.)

At bar, the charge of drug abuse was not specifically related to plaintiff's status in Metro North as a crew dispatcher, but rather, a "more general reflection upon the plaintiff's character", and, therefore, did *not* fall into the "trade, business or profession" exception. Additionally, since the court did not

charge slander per se under the theory of imputation of a serious crime, it is not necessary for us to decide whether a charge of drug use would constitute such an imputation. However, we note that the *use* of drugs does not constitute a crime in New York, much less a "serious" crime. Only the possession and/or sale of controlled substances and the use and/or possession of drug paraphernalia and hypodermic needles is proscribed (*see,* Penal Law § 220.00 *et seq.*).

Moreover, while not necessary to our determination, we note that Chief Judge Kaye has foreshadowed the possible demise of the slander per se rule in defamation cases: "The presumed-damages rule has been found unconstitutional in certain First Amendment cases (*Gertz v Robert Welch, Inc.,* 418 US 323, 349) and criticized for use in defamation cases generally (*see, e.g.,* Anderson, *Reputation, Compensation, and Proof,* 25 Wm & Mary L Rev 747 [1984]; Uniform Defamation Act [Feb. 6, 1992 draft] § 9, and comment thereto)." (*Liberman v Gelstein, supra,* at 435, n 1.)

Therefore, applying the requirements of the usual slander per quod rule, the proof was insufficient, in this case, for the jury to find defendant liable, since special damages were neither pleaded nor proved by the plaintiff. Further, even assuming, arguendo, that plaintiff proved defendant acted with a high degree of awareness that the statements he made were false, constitutional (or "actual") malice is insufficient to justify an award of punitive damages in a defamation case (*see, Prozeralik v Capital Cities Communications,* 82 NY2d 466). Since there was no proof that defendant acted with common-law malice, the award of punitive damages was also not justified. Concur—Milonas, J. P., Rosenberger, Rubin and Nardelli, JJ.