Nolan v State of New York (2018 NY Slip Op 00269)





Nolan v State of New York


2018 NY Slip Op 00269


Decided on January 16, 2018


Appellate Division, First Department


Mazzarelli, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 16, 2018
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick,J.P.
Sallie Manzanet-Daniels
Angela M. Mazzarelli
Marcy L. Kahn
Peter H. Moulton, JJ.


123283 5099 

[*1]Avril Nolan, Claimant-Respondent,
v
The State of New York, Defendant-Appellant.



Defendant appeals from the order of the Court of Claims of the State of New York (Thomas H. Scuccimarra, J.), entered October 8, 2015, which, to the extent appealed from as limited by the briefs, granted claimant's motion for summary judgment on the issue of liability on her defamation per se and Civil Rights Law claims, and denied defendant's cross motion for partial summary judgment dismissing the Civil Rights Law claims.




Eric T. Schneiderman, Attorney General, New York (Eric Del Pozo and Anisha S. Dasgupta of counsel), for appellant.
Lloyd Patel LLP, New York (Erin Lloyd of counsel), for respondent.



MAZZARELLI, J.


In this appeal we confront two separate issues arising out of a claim for defamation per se. First, we must determine whether one making such a claim must prove actual harm to her reputation or whether she must establish merely that she has been actually injured although her reputation remains intact. In addition, we are confronted with the question whether an imputation of HIV qualifies for the "loathsome disease" category of written or spoken material that constitutes defamation per se, relieving the target of the statement from having to prove special damages. The Court of Appeals has endorsed the definition of a "loathsome disease" as one that is "contagious [or] attributed in any way to socially repugnant conduct" (Golub v Enquirer/Star Group, 89 NY2d 1074, 1077 [1997], quoting Chuy v Philadelphia Eagles Football [*2]Club, 595 F2d 1265, 1281 [3d Cir 1979]). We must decide whether, given modern societal views towards those with HIV or AIDS, and given the context of the specific statement at issue here, which was sympathetic towards those with the virus, it was reasonable for the court to characterize it as "loathsome."
The statement at issue was a print advertisement conceived by the New York State Division of Human Rights (DHR). The ad was part of a broad-based educational campaign that DHR had launched in conjunction with the New York State Department of Health's (DOH) AIDS Institute. DOH provided funding to DHR to run public service announcements in local media apprising HIV-positive New Yorkers of their right not to be discriminated against. DHR's idea for the ad was to display a photograph of a person next to copy reading, "I AM POSITIVE(+)" and "I HAVE RIGHTS," and stating, in smaller print, "People who are HIV positive are protected by the New York State Human Rights Law. Do you know your rights? Contact the NYS Division of Human Rights."
The person appearing in the ad was claimant. She had posed for the photograph two years earlier in connection with an online magazine article about New Yorkers' music interests. Unbeknownst to claimant, the person who took the photograph for the magazine sold it to Getty Images, which compiles and sells stock images. DHR licensed the image from Getty. While the email receipt DHR received from Getty stated that the model in the image had signed a release, an assurance also given to DHR over the telephone, it is undisputed that claimant had not signed a release or even given the photographer permission to sell the photo. Further, the license agreement expressly prohibited "defamatory or otherwise unlawful use" of the photo and barred any use "that would be unflattering or controversial to a reasonable person," unless accompanied by a disclaimer that the photo was "used for illustrative purposes" and that the person depicted was a model. No such disclaimer appeared in the ad at issue.
The ad was published in three local general interest newspapers and as a banner ad on three websites. Upon learning of the ad from a friend on the first day it ran, claimant contacted the photographer, who contacted DHR on her behalf and requested that the ad be pulled from circulation. DHR's deputy commissioner for external affairs agreed to pull the spots and to not use the photograph in future advertisements. The next morning, DHR pulled the ad from all outlets.
Claimant filed a verified claim against the State asserting causes of action for defamation, defamation per se, and violation of Civil Rights Law §§ 50 and 51, which bar the nonconsensual use of a person's image for commercial purposes [FN1]. The claim alleged that the ad caused impairment of claimant's reputation, as well as "emotional distress" and "anguish," and sought $1.5 million in damages. After the completion of discovery claimant moved for summary judgment, arguing that the undisputed material facts established that DHR defamed her by recklessly publishing the ad, and that its behavior constituted defamation per se because the ads indicated that she suffered from a "loathsome disease." She further argued that, by using her image in an advertisement without her written consent, DHR violated the Civil Rights Law.
The State opposed claimant's motion and cross-moved for partial summary judgment dismissing the Civil Rights Law claim. It argued that claimant's general defamation cause of action failed because she was unable to show an actual loss of something of economic or pecuniary value. In addition, the State contended that claimant should not be awarded summary judgment on her defamation per se claim, because HIV was not a "loathsome disease," and [*3]because she failed to establish that DHR acted with actual malice or that she suffered reputational harm. The State further argued that summary judgment on the Civil Rights Law claim must be denied because DHR was not a commercial enterprise engaged in trade when it published the public service announcement in which claimant was featured, and that partial summary judgment dismissing the claim should be granted. Claimant countered with the argument that the very fact that DHR saw the need to launch an antidiscrimination campaign for HIV- positive people showed that much of society continues to view such individuals with suspicion and judgment, if not contempt, ridicule, aversion, or disgrace, and so HIV qualified as a "loathsome disease." She disputed the State's argument that she had to show damage to her reputation. With respect to the Civil Rights Law claim, claimant responded that the ad was a paid-for advertisement intended to promote the use of DHR's services, and so the State could not hide behind the public service nature of the ad.
The court granted claimant's motion on the defamation per se and Civil Rights Law claims, and denied the State's motion for partial summary judgment dismissing the Civil Rights Law claims. Initially, the court found it self-evident that DHR was negligent based on the evidence adduced in discovery showing that the person involved in the purchase of the stock image had failed to read the license agreement, that no one had thought through the implications of using the image in the context in which it would be used, and that no one had sought legal advice. However, finding that no special damages were apparent based on the evidence showing that claimant only suffered some discomfort and embarrassment, the court held that she was not entitled to summary judgment on the standard defamation causes of action asserted in the claim.
The court found that claimant was entitled to summary judgment on the defamation per se claims, because "[n]ot just sexually transmitted diseases fall under the loathsome disease category, but any disease that arouses some intense disgust in society, in part because it is viewed as incurable or chronic." The court noted that "[i]t would be hoped that an indication that someone ... has been diagnosed as HIV positive would not be viewed as indicative of some failure of moral fiber, or of some communicable danger, [but] our society is not so advanced." Given the above, the court concluded that from the perspective of the average person, the defamatory content clearly subjected claimant "to public contempt, ridicule, aversion or disgrace and constitutes defamation per se."
Finally, the court found that claimant demonstrated her entitlement to judgment as a matter of law on the Civil Rights Law causes of action, because she established that her photograph was used, within the State of New York, for purposes of advertising or trade, without her written consent.
Preliminarily, claimant does not seriously contest the State's argument that, because she concedes that she only suffered intangible damage in the form of emotional distress, she cannot sustain her general defamation claim, which requires allegations of special damages, i.e., "the loss of something having economic or pecuniary value, which must flow directly from the injury to reputation caused by the defamation and not from the effects of the defamation" (Franklin v Daily Holdings, Inc., 135 AD3d 87, 93 [1st Dept 2015], quoting Agnant v Shakur, 30 F Supp 2d 420, 426 [SD NY 1998]). Accordingly, the court erred in merely denying her summary judgment and not dismissing that claim (see Galasso v Saltzman, 42 AD3d 310, 311 [1st Dept 2007]).
Assuming, without yet deciding, that plaintiff has a defamation per se claim, she need not establish special damages. However, the State argues that claimant's embarrassment and discomfort at having appeared in DHR's ad is still below the threshold of damages required for a defamation per se case. It asserts that she was required to plead and prove actual damage to [*4]reputation (or actual malice [FN2]), contending that under the relevant case law in New York, her allegations of emotional distress are not enough to sustain the claim, even if the claim fits within one of the traditional defamation per se categories. Claimant responds that the weight of the applicable case law shows that in claims for defamation per se, there is no need for a plaintiff to prove specific reputational injury.
The State rests its argument on Gertz v Robert Welch, Inc. (418 US 323 [1974]), in which the Supreme Court considered for the first time the standard to be applied in a defamation case brought by a private person, as opposed to the public official who was the subject of New York Times Co. v Sullivan (376 US 254 [1964]) or the public figure at issue in Curtis Publ. Co. v Butts (388 US 130 [1967]). The Gertz Court left it to the states to establish the elements necessary to sustain a defamation claim by a private individual (376 US at 347). However, it made clear that the states could not provide for liability without fault (id.), and must limit recovery to damages for "actual injury" (id. at 349-350). The Court deferred to the states' own definitions of "actual injury," but made clear that actual injury is not limited to out-of-pocket loss, and noted that "more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering" (id. at 350 [emphasis added]). Several years later, the Court held that, even in cases not involving actual malice, states may permit damages to be presumed in defamation cases where there is no public interest at stake (Dun & Bradstreet, Inc. v Greenmoss Bldrs., Inc., 472 US 749 [1985]).
Here, the matter is unquestionably of public interest, so the Gertz rule applies. Further, none of the circumstances surrounding the publication of the ad suggest that DHR acted with actual malice, so claimant's claim hinges on her ability to prove actual injury. The State asserts that, in defining "actual injury" as directed by the Gertz Court, New York courts have declined to permit recovery for emotional distress without a showing of actual reputational injury. It primarily relies on three cases from this Court in support of that proposition. In Salomone v MacMillan Publ. Co. (77 AD2d 501 [1st Dept 1980], this Court stated:
"As to the claim for mental anguish, it has long been held in this State that such damage is compensable only when it is concomitant with loss of reputation. While the United States Supreme Court, in Gertz, would appear to have allowed the States sufficient latitude to include in the definition of actual injury' mental anguish unaccompanied by loss of reputation, this has not occurred in this State" (77 AD2d at 502 [internal citations omitted]).
In France v St. Clares Hosp. & Health Ctr. (82 AD2d 1 [1st Dept 1981] appeal withdrawn 56 NY2d 593 [1982]), this Court quoted Salomone in holding that the plaintiff's defamation claim failed on the basis that "the record is barren of any evidence whatsoever tending to show that his reputation in the community was in any way diminished by publication of the alleged defamatory letter" (82 AD2d at 5-6). Finally, the State relies on Sager v Local 1199 Drug, Hosp. & Health [*5]Care Empls. Union (238 AD2d 152, 152 [1st Dept 1997]), which rejected the plaintiff's defamation claim because he "had not offered anything more than inadequate boilerplate allegations of general impairment of reputation" and so could not recover for alleged emotional distress.
Claimant argues that Sager is at best inapplicable and at worst wrongly decided. Moreover, she contends that Salomone and France were implicitly overruled by Hogan v Herald Co. (58 NY2d 630 [1982], affg 84 AD2d 470 [4th Dept 1982]). As described by the Fourth Department, the defendants in Hogan relied on Gertz and on France in arguing that the action should be dismissed because the plaintiff had not pleaded injury to his reputation. The Fourth Department rejected this argument as reading Gertz too narrowly:
"[I]t is now established that even in cases of libel per se, damage may not be presumed in the absence of Times malice but must be proved. That is not the same, however, as saying that special damages, as the term is used by New York courts, i.e., as the loss of something having economic or pecuniary value (see discussion of special damages, 2 NY PJI 29, 32, 1981 Supp; see, also, Restatement, Torts 2d, § 575) must be pleaded or proved. While special damages as so defined are included in the term actual damages used in Gertz (supra), the Supreme Court did not limit actual damages to out-of-pocket or pecuniary damage: loss of reputation, humiliation and mental anguish are also compensable (see Restatement, Torts 2d, § 621; 2 NY PJI 29, 32, 1981 Supp). Thus, contrary to defendants' contention, plaintiff need not establish either actual malice or special damages before he may recover" (84 AD2d at 480-481).
The State counters that Hogan actually supports its position insofar as the plaintiff there had pleaded an injury to his reputation.
Claimant has alleged that as a result of DHR's publication of the ad she suffered "impairment of reputation." However, her deposition testimony did not bear that out; she testified vaguely about how the ad affected her in her professional and personal lives, stating only that it made some encounters "awkward" or "uncomfortable." Nevertheless, we agree with claimant that her claim survives under Hogan because there is sufficient evidence in the record that she suffered emotional distress.
Contrary to the State's contention, nothing in Hogan supports the State's argument that reputational harm is the sine qua non of the "actual injury" required by Gertz. Quite the opposite, in stating that, in addition to pecuniary damage, "loss of reputation, humiliation and mental anguish are also compensable," the Fourth Department signaled that any one of those things is sufficient to sustain a defamation claim. Indeed, the model charge for compensatory damages in defamation cases in the Pattern Jury Instructions provides that the jury "may not presume that plaintiff has been damaged. Rather, plaintiff must prove damage to (his, her) reputation or standing in the community, or damages such as personal humiliation, mental anguish and suffering" (PJI 3:29B). The use of the word "or" clearly indicates that the state of the law in New York is such that mental anguish is an alternative to reputational injury in establishing damages in a defamation case. Notably, the official comment to the excerpted model charge cites to Hogan and references Salomone and France with a "but see" signal, indicating that these cases contradict the holding in Hogan. Since Hogan was affirmed by the Court of Appeals, we consider it the prevailing view of the state of the law in New York. To the extent that Sager, the third case cited by the State, relies on Salomone and France and not [*6]Hogan, we decline to follow it.
This conclusion is consistent with Gertz. In Time, Inc. v Firestone (424 US 448 [1976]), the Supreme Court held that the plaintiff's defamation claim was not hampered by her decision on the eve of trial to withdraw her claim for damage to reputation. Interpreting Florida law, the Court observed:
"Florida has obviously decided to permit recovery for other injuries without regard to measuring the effect the falsehood may have had upon a plaintiff's reputation. This does not transform the action into something other than an action for defamation as that term is meant in Gertz. In that opinion we made it clear that States could base awards on elements other than injury to reputation, specifically listing personal humiliation, and mental anguish and suffering' as examples of injuries which might be compensated consistently with the Constitution upon a showing of fault. Because respondent has decided to forgo recovery for injury to her reputation, she is not prevented from obtaining compensation for such other damages that a defamatory falsehood may have caused her" (424 US at 460).
At least one scholar who has studied the issue has observed that, after Hogan, "New York has apparently moved away from the France and Salomone approach and adopted the Firestone approach, indicating that failure to show actual damages to reputation will no longer support summary judgment for defendants" (T. Michael Mather, Experience with Gertz "Actual Injury" in Defamation Cases, 38 Baylor L Rev 917, 933 n93 [1986]).
Of course, because claimant alleges that she was the victim of defamation per se, we must decide whether she is indeed entitled to recover under that theory. A defamation plaintiff must plead special damages unless the defamation falls into any one of four per se categories: (1) statements charging the plaintiff with a serious crime; (2) statements that tend to injure the plaintiff in her trade, business or profession; (3) statements that impute to the plaintiff a "loathsome disease"; and (4) statements that impute unchastity to a woman (see Liberman v Gelstein, 80 NY2d 429, 435 [1992]; Harris v Hirsh, 228 AD2d 206, 208 [1st Dept 1996], lv denied 89 NY2d 805 [1996]). Claimant purports to qualify under the "loathsome disease" category. Whether HIV infection falls under that category appears to be a question of first impression. The State argues that prevailing community attitudes towards those with HIV militate against such a finding, as does the specific message of the ad in which claimant's image appeared, which was an implicit criticism of those who would deprive HIV-positive individuals of their legal rights. Claimant, on the other hand, while taking issue with the archaic term "loathsome," argues that it is legally operative and historically applicable in the case of medical conditions such as HIV that are communicable and can still, in claimant's opinion, result in societal ostracism.
The baseline for any discussion about what constitutes defamatory material is that it " tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community', even though it may impute no moral turpitude to him'" (Mencher v Chesley, 297 NY 94, 100 [1947]). It can safely be said that, if an imputation of being infected with HIV does not meet that standard, it cannot be defamatory under any analysis. Critical to the determination is understanding the "temper of the times" and the "current of contemporary public opinion" (Mencher v Chesley, 297 NY at 100). The State urges that it is helpful to view the impact of the advertisement at issue through the prism of cases addressing statements falsely characterizing a person as "homosexual," a term used by the courts. All four Departments of the Appellate Division have held, or at least suggested, that an imputation of homosexuality effectively constitutes a fifth defamation per se category (see Nacinovich v Tullet & Tokyo Forex, 257 AD2d 523 [1st Dept 1999]; Klepetko v Reisman, 41 AD3d 551 [2d Dept 2007]; Tourge v City of Albany, 285 AD2d 785 [3d Dept 2001]; [*7]Privitera v Town of Phelps, 79 AD2d 1 [4th Dept 1981], appeal dismissed 53 NY2d 796 [1981]). These views were heavily criticized by the Third Department in Yonaty v Mincolla (97 AD3d 141 [3d Dept 2012, lv denied 20 NY3d 855 [2013]). In Yonaty, the court considered the Supreme Court decision in Lawrence v Texas (539 US 558 [2003]) striking down laws criminalizing homosexual conduct, as well as this state's own legislation and judicial pronouncements recognizing and extending equal rights to all persons, including "lesbians, gays and bisexuals" (97 AD3d at 145, citing Executive Law § 296, Domestic Relations Law § 10-a, and Hernandez v Robles, 7 NY3d 338 [2006]). The court concluded that because of these advancements, any lingering prejudice towards homosexuals was insufficient to warrant the inclusion of a false imputation of homosexuality in the categories of material that give rise to a finding of defamation per se.
The State analogizes to Yonaty in arguing that it has similarly ameliorated the treatment of people with HIV so that HIV is no longer a shameful condition worthy of heightened treatment under the defamation laws. It points to Court of Appeals cases and statutes mandating the equal treatment of people with disabilities. It further cites to society's acceptance of celebrities who have revealed their HIV status, such as the actor Charlie Sheen and the basketball-player-turned- business-executive Magic Johnson.
We disagree that the treatment of those with HIV has progressed to that degree. First, it should be noted that HIV affects a broad spectrum of the population, including intravenous drug users. Thus, to the extent that the State attempts to create an analogy with Yonaty, it is a false one. Further, while there is no question that society has taken great steps to protect those with disabilities from discrimination, the State points to no legislation specifically seeking to improve the lot of people with HIV or AIDS. Further, claimant, in countering the State's anecdotal evidence regarding public figures with HIV, cites several sociological studies establishing that HIV continues to be a significant stigma. For example, she cites to academic studies from 2014 and 2015 that conclude that people fear getting tested for HIV because of the perceived social repercussions of a positive result. Since it can still be said that ostracism is a likely effect of a diagnosis of HIV, we hold that the defamatory material here falls under the traditional "loathsome disease" category and is defamatory per se. Further, to the extent that certain medical conditions such as HIV unfortunately continue to subject those who have them to a degree of societal disapproval and shunning, we decline to entertain the State's argument that the entire "loathsome disease" category is archaic and has no place in our jurisprudence.
This is not to imply that we in any way regard HIV or any other disease to be "loathsome," and we disfavor the use of that word. Society aspires to embrace people with various medical conditions, as reflected in the Americans with Disabilities Act and the myriad state and local statutes and ordinances requiring accommodations for and equal treatment of such persons. Accordingly, we prefer a formulation that makes clear that an imputation of a particular disease is actionable as defamation per se not because the disease is objectively shameful, but because a significant segment of society has been too slow in understanding that those who have the disease are entitled to equal treatment under the law and the full embrace of society. Such a reworking of the category reflects the reality that those who suffer from the condition are the unfortunate targets of outmoded attitudes and discrimination.
Indeed, we recognize that the very campaign in which claimant was unwittingly enmeshed was designed to correct such outmoded attitudes toward people infected with HIV. However, we disagree with the State that this somehow provides safe harbor from the defamation claim at issue. Regardless of DHR's intentions, nothing about the ad suggested that the person depicted in it — claimant — was not infected with HIV. That context would have mattered only if the ad had signaled to reasonable readers that she was not. Further, the State's argument can very easily be turned on its head, because the very fact that DHR highlighted the need for people with [*8]AIDS to not feel stigmatized is a recognition that they do.
Finally, we agree with the State's argument that the court incorrectly awarded summary judgment to claimant on her causes of action under 50 and 51 of the Civil Rights Law and erred in denying its cross motion for partial summary judgment dismissing those claims. The Civil Rights Law sections at issue provide a civil remedy for the use by a "person, firm or corporation" of an individual's likeness "for advertising purposes" or "for the purposes of trade" unless consent has been obtained (Civil Rights Law §§ 50; 51). However, as the State notes, since its sovereign rights, prerogatives and interests were implicated when DHR decided to run the ad, the statute does not apply to it (see generally Matter of Leonard v Masterson, 70 AD3d 697, 698 [2d Dept 2010]). Enforcement of the Human Rights Law is an "exercise of the police power of the state for the protection of the ... people of this state" (Executive Law § 290[2]), and DHR is tasked with issuing "publications" "to inform persons of the[ir] rights" against unlawful discrimination (id. § 295[9]).
Claimant is correct that sovereign functions have been described as those activities "in which no private citizen engages" (Seidelman v State of New York, 202 Misc 817, 818 [Ct Cl 1952]). However, the functions of the sovereign plainly stretch beyond things such as suppressing an insurrection, and cross over into areas of activity in which private citizens engage. Thus, the fact that private citizens may also publish writings that educate the public about HIV antidiscrimination laws is not dispositive of the instant claim (see Matter of Warren, 53 NY2d 118 [1981] [State Department of Mental Hygiene is performing sovereign function in caring for the mentally ill]). We reject claimant's reliance on Seidelman (202 Misc 817), which involved the State's plainly commercial and nonsovereign operation of a ski facility. The contrast here is stark: DHR was engaged in a decidedly noncommercial campaign designed to advance its mission of promoting civil rights. We note that the same concepts governing applicability of the Civil Rights Law to the State serve to defeat claimant's argument that the waiver of sovereign immunity in Section 8 of the Court of Claims Act subjects the State to liability.
Accordingly, the order of the Court of Claims of the State of New York (Thomas H. Scuccimarra, J.), entered October 8, 2015, which, to the extent appealed from as limited by the briefs, granted claimant's motion for summary judgment on the issue of liability on her defamation per se and Civil Rights Law claims, and denied defendant's cross motion for partial summary judgment dismissing the Civil Rights Law claims, should be modified, on the law, to deny claimant summary judgment on the Civil Rights Law claims, grant the State summary judgment dismissing those claims, and, upon a search of the record, grant the State summary judgment dismissing the standard defamation claim, and otherwise affirmed, without costs.
All concur.
Order, Court of Claims of the State of New York (Thomas H. Scuccimarra, J.), entered October 8, 2015, modified, on the law, to deny claimant summary judgment on the Civil Rights Law claims, grant summary judgment dismissing these claims, and, upon a search of the record, grant summary judgment dismissing the standard defamation claim, and otherwise affirmed, without costs.
Opinion by Mazzarelli, J. All concur.
Renwick, J.P., Manzanet-Daniels, Mazzarelli, Kahn, Moulton, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JANUARY 16, 2018
CLERK



Footnotes

Footnote 1: Claimant commenced a plenary action against Getty Images, and reached a confidential settlement with it.

Footnote 2: "Actual malice" is the standard used to assess potential liability in cases involving alleged defamation against public figures or against private figures whose speech was of public concern. It requires the plaintiff to establish that the defendant acted "with knowledge that [the statement] was false or with reckless disregard of whether it was false or not" (New York Times Co. v Sullivan (376 US 254, 280 [1964]).